## WILLIS J. KNOWLTON

*vs.*

## PATRONS ANDROSCOGGIN FIRE INSURANCE COMPANY.

### Waldo.    Opinion November 16, 1905.

*Fire Insurance. Standard Policy. Dwelling House. Non-Occupancy. Increase of Risk. Waiver. Contract. Stat. 1895, c. 18, § 3. R. S. 1883, c. 49, § § 20, 25. R. S. 1903, c. 49, § § 4, 26, 27, 31.*

The legislative enactment of 1895, chapter 18, prescribed a form for a standard policy of insurance, prohibited insurance companies doing business in this state from issuing policies of fire insurance in any other form, and by section three of the act expressly repealed all provisions of law inconsistent with the terms of the policy thus enacted. This standard policy, by its terms, is declared void if the premises become vacant by the removal of the owner or occupant, and so remain vacant for more than thirty days, without the assent of the company, in writing, or in print, irrespective of the question whether such vacancy materially increases the risk or not. This provision is clearly inconsistent with the statute of 1883, declaring that a change in the occupation of the property should not affect the policy unless it materially increased the risk. *Held:* that the earlier enactment of 1883 was expressly repealed by the terms of section three of chapter 18 of the laws of 1895.

The question of material increase of the risk from vacancy or non-occupancy is not open under the provisions of the standard policy itself as prescribed by chapter 18 of the laws of 1895.

Furthermore in the case at bar these provisions of the standard policy relating to the vacancy of the premises, are modified by the separate slip or rider attached to the policy according to the general authority therefor given by section four of chapter 49, R. S. By this modified contract the parties definitely stipulated that the policy should be rendered void for vacancy or non-occupancy continued for more than ten days. This is the contract which the parties themselves made and the court is not authorized to substitute for it another and a different contract which the parties did not make.

In the case at bar the property insured, a set of connected farm buildings situated about one mile from Liberty Village where the plaintiff resided, was destroyed by fire April 19, 1903. The house was not occupied by the

plaintiff himself, but had been occupied by his tenant Albert Turner and his family. A stock of cattle and also some hay and farming tools, the property of the plaintiff, were kept in the barn and cared for by Turner. On the 28th day of March preceding the fire, Turner hired a tenement in Liberty Village and removed from the house in question sufficient furniture and goods to furnish it. On the fourth day of April following, his wife and family moved into this tenement in Liberty Village, but he continued to pay rent for the plaintiff's house up to the time of the fire. He continued to work upon the farm pleasant days, leaving his family in the village in the morning, taking his dinner with him to the farm, and returning to his family in the village at night. Rainy days and Sundays, he was not at the farm. On these days the stock was cared for by a neighbor, one Weed. Turner was not at the farm on the day of the fire, Weed caring for the stock on that day. He intended to return to the Knowlton place with his family in about two months.

*Held:* that upon these facts the plaintiff's buildings insured by the policy in suit, must be deemed to have become "personally unoccupied" without the consent of the company, for more than ten days immediately preceding their destruction by fire.

Subsequent to the date of the fire, the defendant company sent to the plaintiff an "assessment card" for the 28th assessment made by the company dated July 30, 1903, informing the plaintiff that the assessment on his premium note was one dollar, and requesting payment on the same. This general assessment covered eight losses that occurred prior to the fire, and ten that occurred after the fire. The plaintiff paid this sum of one dollar, assessed on his premium note, some time in August, 1903. The plaintiff contended that the acceptance by the defendant company of the plaintiff's proportional part of this assessment operated as a waiver of the forfeiture resulting from such non-occupancy.

In two previous decisions of this court questions of waiver were raised precisely analogous to that in the case at bar and were decided adversely to the plaintiff's contention. In each of these cases the provisions of the charter of the company relating to membership, the obligation of every member to pay his proportion of all losses happening during his connection with the company, and the existence of the lien on the buildings for the security of the deposit note were in effect precisely identical with the statutory provisions in force at the date of the plaintiff's policy in this suit. These authorities must be deemed decisive of the case at bar.

On the question of waiver, *Held:* that the forfeiture resulting from the non-occupancy of the plaintiff's buildings, was not waived by the company in accepting payment of an assessment upon the plaintiff's premium note under the circumstances stated.

On report. Judgment for defendant.

Assumpsit upon a policy of fire insurance in the standard form, issued by the defendant company upon the buildings of the plaintiff,

situated in Montville. Plea, the general issue with the following brief statement:

"That the buildings insured by the policy declared upon in the plaintiff's writ had become vacant by the removal of the occupant, and had so remained vacant for more than ten days prior to their destruction by fire, without the consent in writing of the company certified on the back of the policy by the president and secretary or by two of the directors, whereby said policy became void.

"That the buildings insured by the policy declared upon in the plaintiff's writ had become personally unoccupied, and had so remained personally unoccupied for more than ten days prior to their destruction by fire, without the consent in writing of the company certified on the back of the policy by the president and secretary or by two of the directors, whereby said policy became void."

Tried at the April term, 1905, of the Supreme Judicial Court, Waldo County. After the evidence in behalf of the plaintiff had been fully taken out, the defendant notified the court that it did not propose to offer any evidence, and did not question the facts as proved by the plaintiff. Thereupon it was agreed that the case be reported to the Law Court "for the Law Court to pass upon and decide all questions of law involved and all questions of fact, if any, and inferences from facts, if any, involved in the case, and to order such judgment as the law and facts may require."

The facts, so far as material, appear in the opinion.

*Arthur Ritchie*, for plaintiff.

*John A. Morrill*, for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, PEABODY, JJ.

WHITEHOUSE, J. This is an action upon a policy of fire insurance in the standard form, dated March 26, 1902, issued by the defendant company upon the buildings of the plaintiff, situated in Montville, as follows: on dwelling house and L $200; on barn, $125; on wood-shed, $25; on hen-shed, $25; on silo, $25, $400.

All the buildings except the silo which had not then been constructed but the lumber for which was then on the premises, were totally destroyed by fire on the night of Sunday, the nineteenth of April, 1903, between ten and eleven o'clock.

Attached to the policy was a "rider" or additional paper containing the following stipulation: "It is also a part of the consideration of this policy, and it is especially agreed that this policy shall be void and the whole amount of premium paid forfeited to the company if the buildings hereby insured shall become vacant by the removal of the owner or occupant or shall become personally unoccupied for more than ten days without the consent in writing of the company certified on the back of the policy by the President and Secretary or by two of the Directors."

Section 20 of chapter 49 of the Revised Statutes of 1883, reads as follows: "A change in the property insured or in its use or occupation, or a breach of any of the terms of the policy by the insured, do not affect the policy unless they materially increase the risk."

But the legislative enactment of 1895, chap. 18, prescribed a form for a standard policy of insurance, prohibited insurance companies doing business in this state from issuing policies of fire insurance in any other form and by section 3 of the act expressly repealed all provisions of law inconsistent with the terms of the policy thus enacted. This standard policy, by its terms, is declared void if the premises become vacant by the removal of the owner or occupant, and so remain vacant for more than thirty days, without the assent in writing or in print of the company, irrespective of the question whether such vacancy materially increases the risk or not. This provision is clearly inconsistent with the statute of 1883 above quoted, declaring that a change in the occupation of the property should not affect the policy unless it materially increased the risk. It is accordingly claimed in behalf of the defendant company that the earlier enactment of 1883 was expressly repealed by the terms of section three of chapter 18 of the laws of 1895.

In accordance with this view the clause above quoted from section 20 of chapter 49 of the revised statutes of 1883, was omitted from the revision of 1903.

But it is contended in behalf of the plaintiff that the question of material increase of the risk from vacancy or non-occupancy, is still open under the provisions of the standard policy itself as prescribed by chapter 18 of the laws of 1895. It is there provided that the policy shall be void if without the assent in writing or in print of the company "the situation or circumstances affecting the risk shall, by or with the knowledge, advice, agency or consent of the insured, be so altered as to cause an increase of such risks." It will be seen however that this provision relied on by the plaintiff is one of eleven independent clauses in the policy by each of which the policy is declared to be void upon the conditions therein specified, and it is immediately followed by these two clauses, viz: "or if without such assent, the said property shall be sold, or this policy assigned, or if the premises hereby insured shall become vacant by the removal of the owner or occupant, and so remain vacant for more than thirty days without such assent."

It was impossible for the legislature to anticipate and specify the infinite variety of changes in the situation and circumstances that might cause an increase of the risk. It therefore inserted the comprehensive provision relied upon by the plaintiff. In the light of experience, however; it was practicable to specify ten conditions or changes in the situation of the property, each of which would render the policy void without opening to actual inquiry the question of the increase of the risk. The language of the standard policy is not to be construed to mean that an issue of fact is to be raised upon the question of increase of risk under each of the independent clauses in question. It would not be reasonable to suppose that the legislature contemplated a judicial inquiry under the clause relating to the keeping of gun-powder, or naptha, or under the clause respecting other insurance on the property, or the clause in regard to the sale of the property and the assignment of the policy without the assent of the company as there specified. With no greater or better reason can it be claimed that the question of increase of risk is open under the clause rendering the policy void for vacancy or non-occupancy. It is an independent and absolute stipulation that the policy shall be void if the premises become vacant, and remain so for more than

thirty days as there specified.   It is not qualified by any other clause in the policy.

Furthermore in the case at bar these provisions of the standard policy relating to the vacancy of the premises, are modified by the separate slip or rider attached to the policy according to the general authority therefor, given by section 4 of chapter 49, R. S.   By this modified contract the parties definitely stipulated that the policy should be rendered void for vacancy or non-occupancy continued for more than ten days.   This is the contract which the parties themselves made and the court is not authorized to substitute for it another and a different contract which the parties did not make.

The case comes to this court upon a report of the uncontroverted evidence of the plaintiff and the question arises in the first place whether upon the. facts thus disclosed, the buildings did become vacant by the removal of the owner or occupant or did become personally unoccupied and so remain vacant or personally unoccupied for more than ten days without the consent in writing of the company.   It has been suggested that the two words vacant and unoccupied are synonymous, and there are doubtless conditions of a dwelling house when either word applied to it or both words applied to it, will express a like condition of it.   But as stated by the court in *Herman* v. *Adriatic Fire Insurance Co.*, 85 N. Y. 162:   "A dwelling-house is chiefly designed for the abode of mankind.   For the comfort of the dwellers in it, many kinds of chattel property are gathered in it.   So that, in the use of it, it is a place of deposit of things inanimate and a place of resort and tarrying of beings animate. With those animate far away from it, but with those inanimate still in it, it would not be vacant, for it would not be empty and void. And as a possible case with all inanimate things taken out, but with those animate still remaining in it, it would not be unoccupied, for it would still be used for shelter and repose.   And it is because, in our experience of the purpose and use of a dwelling house, we have come to associate our notion of the occupation of it with the habitual presence and continued abode of human beings within it, that that word applied to a dwelling always raises that conception in the mind. Sometimes, indeed, the use of the word "vacant" as applied to a

dwelling, carries the notion that there is no dweller therein; and we should not be sure always to get or convey the idea of an empty house, by the words "vacant dwelling" applied to it. But when the phrase "vacant or unoccupied" is applied to a dwelling-house, plainly there is a purpose—an attempt to give a different statement of the condition thereof; by the first word, as an empty house, by the second word, as one in which there is not habitually the presence of human beings." See also *Sonneborne* v. *Ins. Company,* 44 N. J. L. 220.

In the case at bar the property insured was a set of connected farm buildings situated in a farming community in the town of Montville, about one mile from Liberty village where the plaintiff resided. The nearest house was from 500 to 700 feet distant. The house was not occupied by the plaintiff himself, but had been occupied by his tenant Albert Turner and his family, consisting of a wife and three children. A stock of cattle and also some hay and farming tools the property of the plaintiff were kept in the barn and cared for by Turner. On the 28th day of March preceding the fire, Turner hired a tenement in Liberty village and removed from the house in question sufficient furniture and goods to furnish it. On the fourth day of April following, his wife and family moved into this tenement in Liberty village, but he continued to pay rent for the plaintiff's house up to the time of the fire. He continued to work upon the farm pleasant days, leaving his family in the village in the morning, taking his dinner with him to the farm, eating it in the house there and lying on the couch while the horses were feeding. At night he returned to his family in the village. Rainy days and Sundays, he was not at the farm. On these days the stock was cared for by a neighbor, one Weed. Turner was not at the farm on the day of the fire, Weed caring for the stock on that day. The removal to Liberty village was occasioned by the approaching confinement of his wife, and he intended to return to the Knowlton place after his wife became able to do so. Her confinement occurred on the twenty-second day of May, following the fire. A few articles in the house belonged to Turner's mother, and he had made arrangements

for their removal, because, as he says, he was afraid some might be stolen.

Upon these facts, it is contended in behalf of the defendant company that the premises had become vacant or personally unoccupied by the removal of Turner, and remained so for more than ten days prior to their destruction by fire, without the consent of the company in writing and that the policy by the terms on the rider attached to it, had therefore become void.

In *Corrigan* v. *Conn. Fire Ins. Co.*, 122 Mass. 298, a policy of insurance upon a house provided that the policy "shall be void if the house shall remain vacant or unoccupied for the space of ten days, without written notice to and the consent of the company"; and it was held that if the house had not been used as a dwelling place by some one within ten days of the loss, the policy would be void; and that if the former occupant had moved with his family into another house where they slept and took their meals, the fact that some of his furniture remained in the house and the key had not been surrendered to the landlord until within the ten days, would not constitute an occupancy of the premises. The fact that the plaintiff left a dwelling house furnished and in charge of his farmer who kept the farm house near by, and whose wife visited and aired the dwelling every few days, will not satisfy the condition of occupancy. For a dwelling house to be occupied, it must be used by human beings as their customary place of abode. *Herman* v. *Ins. Company*, 85 New York, 162.

In *Hanscom* v. *Insurance Company*, 90 Maine, 338, the court say: "The fact that the furniture remained in the house and that the plaintiff's hired man made a frequent inspection of the household goods and had a general oversight of the buildings during the day, is not a full equivalent for the constant supervision involved in the occupancy of the premises as a customary place of abode, and the actual presence in the building of those who are living in it and using it as a dwelling house day and night." *Ashworth* v. *Builders Ins. Co.*, 112 Mass. 422; *Herman* v. *Adriatic Ins. Co.*, 85 N. Y. 162; *Bonenfant* v. *Ins. Co.*, 76 Mich. 654; May on Ins. 249, A; Wood on Insurance, page 180. A purpose to move into a house, though

partly executed by filling it with furniture, will not aid the insured unless the purpose is rendered complete by actual occupancy. If the premises become unoccupied and remained so up to and at the time of the fire, the condition is broken. 1 May on Insurance, 502. The mere presence of goods in the house and a supervision over it, is not "occupancy"; that requires "living" in it. *Moore* v. *Phoenix Ins. Company*, 64 N. H. 140. *Sonneborn* v. *Ins. Company*, 44 N. J. L. 220. A house in which no one lives but in which a former occupant had left some trifling articles of furniture, not of such character as to be valuable for use elsewhere is "vacant and unoccupied" within the meaning of those terms as used in a fire insurance policy. *Moore* v. *Phoenix Ins. Company*, 64 N. H. 140.

In *Sleeper* v. *Insurance Company*, 56 N. H. 401, the policy provided: "If the premises hereby insured become vacant by the removal of the owner or occupant without immediate notice to the company and consent endorsed hereon . . . . . . this policy shall be void." The tenant paid for rent up to May, 1872; he left in April, 1871, and went to Laconia, his family having left a short time previous. The wearing apparel of himself and family had all been taken away and a portion of what little furniture they possessed. He intended to return the next spring, or earlier, if business should be dull in Laconia. No person lived in the buildings after he left. The buildings were totally destroyed by fire October 30, 1871, up to which time he had not decided to return at any definite period; neither plaintiffs nor defendants had any notice that the tenant had vacated the premises until after the fire. *Held*, that the premises were vacant. The court says: "I think when the occupant of a dwelling house moves out with his family, taking a part of his furniture and all the wearing apparel of the family, and makes his place of abode in another town, although he may have an intention of returning in eight or ten months, such dwelling house while thus deserted must be regarded as unoccupied,—that is, vacated according to the natural and ordinarily received import of those terms." Where the occupant moved out leaving only a bed-stead and strip of carpet, and one of his sons slept in the house for a month after, but afterwards the house was entirely abandoned for six or seven weeks before

the fire, the court held the premises unoccupied and the policy void, not only as to the house, but also as to all farm buildings insured, since the condition as to vacancy of the premises belonged to all the subjects of the contract and is a potent influence on the assumption of the entire risk. *Hartshorne* v. *Ins. Company,* 50 N. J. L. 427-9. See also *Sonneborn* v. *Insurance Co.,* 44 N. J. L. 220.

The plaintiff's buildings insured by the policy in suit, must therefore be deemed to have become "personally unoccupied" without the consent of the company, for more than ten days immediately preceding their destruction by fire.

It is finally contended in behalf of the plaintiff, however, that the acceptance by the company, of the plaintiff's proportional part of the assessment of July 30, 1903, operated as a waiver of the forfeiture resulting from such non-occupancy.

It is not in controversy that a representative of the company had an interview with the plaintiff four or five days after the fire, and was then fully informed of the situation and circumstances connected with the loss of the buildings. Subsequently on the 20th day of July, 1903, the secretary of the company addressed to the plaintiff the following letter, which was recived in due course of mail, viz :
"Dear Sir : —

The Directors of this Co. to a man would be glad to include your loss with our assessment, but our Attorney, after being made acquainted with the facts as stated by you, says to do so would invalidate our whole assessment which of course we cannot do. He cited us to "May on Insurance," page 502, which seems to fit your case, and when in some Attorney's office, I wish you would have them refer to it so you can see for yourself.

I am very sorry to have to write this letter for I had hoped we might pay you."

It appears from the plaintiff's testimony that he understood this to be a letter "denying the risk."

Subsequently the treasurer of the company sent to the plaintiff an "assessment card" for the 28th assessment made by the company dated July 30, 1903, informing him that the assessment on his premium note was one dollar, and requesting payment of the same.

This general assessment of the company covered eight losses that occurred prior to April 19, 1903, and ten that occurred after that time. The plaintiff paid this sum of one dollar, assessed on his premium note some time in August, 1903.

The following provisions are found in chapter 49 of the revised statutes of 1883, relating to Mutual Fire Insurance Companies, viz: Section 25. "Every person insured by such company, or its legal representatives or assigns continuing to be insured therein, is a member of the company during the term specified in his policy and no longer."

Section 26. (As amended by chapter 95 of the laws of 1895); "The insured before receiving his policy, shall deposit his note for the sum determined by the directors, which shall not be less than five per cent of the amount insured, and such part of it as the by-laws require, shall be immediately paid and endorsed thereon; and the remainder in such installments as the directors from time to time require for the payment of losses and other expenses, to be assessed on all who are members when such losses or expenses happen, in proportion to the amounts of their notes." . . . . .

Section 28. The company shall have a lien against the assured on the buildings insured and the land appurtenant thereto, for the amount at any time due on said note, to commence from the time of the recording of the same, as hereinafter provided, and to continue sixty days after the expiration of the policy on which the note was given." . . . . .

These statutory provisions were in force at the date of the policy in suit, and are retained in chapter 49 of the Revised Statutes of 1903, in sections 26, 27 and 31, respectively.

In *Philbrook* v. *N. E. Mutual Fire Ins. Co.*, 37 Maine, 137, a question of waiver was raised precisely analogous to that in the case at bar and was decided adversely to the plaintiff's contention. In that case there was a forfeiture of the policy resulting from the act of the plaintiff in obtaining other insurance without the consent of the company, in violation of the provisions of the charter, and the plaintiff contended that the collection of an assessment on the plaintiff's premium note, ordered by the company within the life of the

policy but after the fire, operated as a waiver of the forfeiture. All of the losses covered by the assessment in that case occurred after the forfeiture, and a part of them after the fire and after the denial of liability. The provisions of the charter of that company relating to membership, the obligation of every member to pay his proportion of all losses happening during his connection with the company, and the existence of the lien on the buildings for the security of the deposit note were in effect precisely identical with the statutory provisions above quoted in force at the date of the plaintiff's policy in suit. In the opinion the court say: "No provisions in the Act of incorporation exonerate a member from his obligations; or put an end to his connection with the company by a rejection of his claim for a loss, which may occur; neither does it provide, that when a policy is made void, by the holder's voluntary act, he is excused from the payment of assessments made afterwards. If it were so, it would be in the power of the party assured, to relieve himself of his obligations at pleasure, if he should choose to give up the benefit of his insurance by conduct of his own. The most satisfactory reasons may exist for a rejection of a claim by the directors. Par. 1, of the Act, refers to such; and is it to be supposed, that by the refusal to pay for a loss, not covered by the policy, the premium note of the person, who sustained the loss, is thereby cancelled?"

A waiver, in such a case, is quite unlike a waiver of strict compliance with the charter and by-laws in certain preliminary steps, in order to make a valid policy available. Here the foundation of the claim is an insurance followed by a loss, and the defense is upon the ground that the insurance ceased utterly before the loss, and consequently, if it be so, the claim is baseless. *Heath et al.* v. *Franklin Insurance Company*, 1 Cush. 257. The evidence in this case fails to satisfy us that the directors designed to exercise the power, not possessed by them, and gave their consent to a second insurance; or that they did anything which gave validity to a policy which had become void by the plaintiff's acts and omissions."

This decision was affirmed in *Gardiner* v. *Piscataquis Mutual Fire Ins. Co.*, 38 Maine, 439. In that case a forfeiture had resulted from the plaintiff's failure to give notice of a material increase in the risk

happening after the receipt of his policy, and it was contended that by making and collecting an assessment upon the plaintiff after the · fire, covering losses which occurred after the forfeiture, the defendant company was "estopped from treating the policy as void." But the court said: "The making of such assessments by the defendants, for subsequent losses, would not revive the policy, nor was it inconsistent with the legal right of the company to treat it as void. *Neely* v. *Onondaga M. Ins. Co.,* 7 Hill. 49; *Smith* v. *M. F. Ins. Co.,* 3 ·Hill. 508; *Philbrook* v. *N. E. M. F. Ins. Co.,* 37 Maine, 137."

In *Neely* v. *Onondaga Mutual Ins. Co.,* supra, the court say: "Although the plaintiff's policy became void by the alienation of the property insured, it does not follow that his deposit note was also void. On the contrary, until he surrendered his policy, and paid his proportion of all losses which accrued " prior to such surrender", the deposited note remained obligatory upon him. He does not pretend that he surrendered his policy previous to the assessment mentioned in the replication; and he was therefore liable to pay his proportion of the losses for which that assessment was made. The replication shows that the defendants have enforced this liability; but their acts, instead of evincing an intention to affirm the existence of the policy, are perfectly consistent with their right to treat it as void."

These authorities must be deemed decisive of the case at bar. The cases cited by the defendant are clearly distinguishable from it.

It is accordingly the opinion of the court that the forfeiture resulting from the non-occupancy of the plaintiff's buildings, was not waived by the company in accepting payment of an assessment upon the plaintiff's premium note under the circumstances stated, and that the entry must be,

*Judgment for the defendant.*