LIVERPOOL & LONDON GLOBE INS. CO. v. BAKER. (No. 1826.)

(Court of Civil Appeals of Texas. Texarkana. July 5, 1917. Rehearing Denied Nov. 22, 1917.)

1. INSURANCE ⬤⟞323(1)—FIRE INSURANCE— "VACANT" OR "UNOCCUPIED."

A provision invalidating a fire policy if insured property became "vacant or unoccupied" for ten days is breached where tenants moved from the building expecting to return each week, but were prevented from doing so by weather conditions.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Vacancy —Vacant—Vacate; Unoccupied.]

2. INSURANCE ⬤⟞668(15)—WAIVER—FIRE POLICY PROVISIONS.

Whether a breach of a provision invalidating a fire policy if property remained vacant or unoccupied for 10 days was waived by submitting proofs of loss, etc., pursuant to a request of the insurer's adjuster, held a jury question.

Error from District Court, McLennan County; H. M. Richey, Judge.

Action by C. D. Baker against the Liverpool & London Globe Insurance Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

The action is by the defendant in error on a fire insurance policy covering a frame dwelling and the shade trees on the premises. There was a total loss of the dwelling and

17 of the shade trees by fire occurring November 30, 1914. The insurance company specially pleaded a violation of the stipulation in the policy reading:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days."

As against the special defense the plaintiff, in a supplemental petition, pleaded waiver of the provision in the policy and also estoppel on the part of the insurance company to assert the forfeiture. The insurance company denied the matter set up in the supplemental petition.

The evidence establishes that after the delivery of the policy to plaintiff, C. D. Baker, he placed A. M. Havens in the dwelling as tenant. Mr. Havens and his family occupied the dwelling continuously until October 5, 1914, on which date he and his family went to a farm belonging to the insured, Baker, about six miles southeast from the dwelling, for the purpose of picking cotton, expecting to return to his dwelling on Saturday night. As testified to by Mr. Havens:

"Myself and family went to Mr. Baker's farm to pick some cotton, and it was our intention to go back every Saturday night. When we left the house we took only a few of our clothes and two or three quilts, and we left only temporarily, expecting to return each Saturday night."

In the first week of Mr. Havens' absence bad weather set in, and continued until after November 30th, rendering the public road difficult to travel, and on this account Mr. Havens and his family were prevented from returning to the dwelling in evidence. Mr. Havens did not remove from the dwelling any of his household goods, but all of his household goods were in the dwelling and were destroyed with it on November 30, 1914. The fire occurred during the absence of Mr. Havens and his family, and his absence, under the circumstances stated, was from October 5, 1914, until after the dwelling was destroyed by fire on the date above given. No person actually resided or stayed in the dwelling during Mr. Havens' absence.

It further appears that the next week after the fire the owner of the dwelling had a conversation with the adjuster of the company, who came to investigate the loss, and disclosed to him all the facts with reference to the fire and the absence of the tenant from the dwelling. The adjuster looked at the destroyed building and told the plaintiff that he would get a letter in about 10 days, concerning what the company would do. The plaintiff informed the local agent of the company of the absence of the tenant from the dwelling the day of the loss, and later the agent took the affidavit of the tenant, which affidavit set out in full the fact of his absence from the dwelling. The adjuster made a second trip to the place of loss concerning the loss, and the agent furnished the adjuster at the time with a copy of the affidavit of the tenant. At a later period the adjuster, in the name of the company, wrote the plaintiff a letter stating that the company was not satisfied with the circumstances of the loss, but "if you hold, as stated, the above-numbered contract, it would be well for you to meet the requirements therein set out." Acting on the letter, the plaintiff employed an attorney and had him prepare and send to the company proofs of loss required by the terms of the policy, and incurred expense in order to do so.

The jury in a special issue found from the evidence that the dwelling in suit was not vacant or unoccupied for as much as 10 days at any time before it was destroyed by fire. The court entered judgment for the plaintiff on the verdict.

Thompson, Knight, Baker & Harris and Will C. Thompson, all of Dallas, for plaintiff in error. Allen Beadel, of Moody, and J. P. Alexander, of Waco, for defendant in error.

LEVY, J. (after stating the facts as above). [1] The plaintiff in error insists that under the undisputed facts there was no such occupancy of the dwelling as the policy contemplated, and that the court should have directed a verdict for the defendant as requested. It is believed that the court should have directed a verdict for the defendant on this issue, and that the plaintiff in error's insistence of error should be sustained. The precise facts of this case are that the tenant and his family, occupying the dwelling as a residence on October 5th, went to another place six miles distant to pick cotton, expecting to return on the Saturday within the week, but were prevented by bad weather and the condition of the road from returning before the building was destroyed by fire on November 30th. The household goods remained in the dwelling. And the special clause in the policy on which the defense is based is:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days."

It becomes necessary, therefore, to determine when, in legal contemplation, the dwelling may be said to have been "vacant or unoccupied" within the meaning of these words as used in the policy. The word "vacant" is not synonymous with "unoccupied." 2 Cooley on Insurance, p. 1663. And as the words "vacant" and "unoccupied" are used in the clause of the policy disjunctively, it is not incumbent on the defendant, in order to sustain the defense, to show that both conditions existed for 10 days before the fire. "Vacant" means without inanimate objects, and "unoccupied" means without animate objects. Herrman v. Insurance Co.,

85 N. Y. 162, 39 Am. Rep. 644. Giving, then, the word "vacant," as used and as applied to a dwelling, the meaning of being deprived of contents such as are usual to the use of a dwelling (2 Cooley on Ins. p. 1663), the words "or unoccupied" would mean and have reference to the lack of actual use of the dwelling by some person or persons. Knowlton v. Insurance Co., 100 Me. 481, 62 Atl. 289, 2 L. R. A. (N. S.) 517; Limburg v. Insurance Co., 90 Iowa, 709, 57 N. W. 626, 23 L. R. A. 99, 48 Am. St. Rep. 468; Stoltenberg v. Insurance Co., 106 Iowa, 565, 76 N. W. 835, 68 Am. St. Rep. 323; Ashworth v. Fire Ins. Co., 112 Mass. 422, 17 Am. Rep. 117.

Consequently, as within the meaning of the word "vacant" as contemplated by the policy, the insured dwelling may not be regarded as vacant, for, in point of fact, the household effects were in the dwelling, and were articles of a character adapted to the use and purpose of a dwelling. But the personal absence of the occupants of the dwelling would, within the meaning of the words "or unoccupied" as used in the policy, be an act rendering the dwelling unoccupied for the time by them. And it is believed that the temporary absence of the occupants, as proven, would not fulfill the condition of the stipulation, for, according to the terms of the clause, the dwelling may remain "unoccupied" only for the period of 10 days without forfeiture of the policy, unless nonoccupancy be consented to by the insurance company. Thus, by the terms of the clause, the occupants of the dwelling may be temporarily absent from the dwelling for a period of 10 days or less, and such absence would not be an act rendering the dwelling "unoccupied" so as to work a forfeiture during said time of absence. But the parties, when they entered into the contract of insurance, did not, according to the special clause as to occupancy, contemplate nor provide that the dwelling should be treated as "occupied" if the occupants remained absent from the dwelling for more than ten days unless consented to by the insurance company. The courts cannot change or ignore the agreement of parties, but must construe their agreement as it is found. The case of Insurance Co. v. Evants, 94 Tex. 490, 62 S. W. 417, was where an owner was absent from the dwelling, but left a servant "who stayed in the room and slept there until the house was destroyed by fire," and in virtue of the fact that there was a personal occupancy of the dwelling the Supreme Court held that the dwelling did not become unoccupied within the meaning of the contract of insurance. In the case of Insurance Co. v. Kempner, 87 Tex. 229, 27 S. W. 122, 47 Am. St. Rep. 99, a vacancy of three days incident to a change of tenants was held to avoid a policy containing a stipulation that if the house should become vacant or unoccupied the policy should "at once" become void, upon the ground that the stipulation was contractual "and the court must enforce the contract as made." The effect of this latter decision is that such stipulation in the policy was a reasonable subject-matter of contract, and that, as the parties contracted against nonoccupancy of the building for any period of time, nonoccupancy for any period of time would be a breach of the stipulation. It logically follows that if the parties may contract against nonoccupancy of the building for any period of time, they may legally contract for temporary absence or nonoccupancy of the dwelling for a period not to exceed 10 days. The case of Phœnix Ins. Co. v. Burton, 39 S. W. 319, is cited and relied on as supporting the judgment here for the plaintiff. While that case cites the Kempner Case, supra, it does not support the ruling, and we follow the Kempner Case as decided by the Supreme Court enforcing contractual stipulations.

[2] But the breach of the condition of the clause considered would not necessarily require a judgment for the defendant if the evidence warranted a finding of fact that there was a waiver, as pleaded, on the part of the insurance company of forfeiture by reason of nonoccupancy in the facts. It is believed the facts made this issue in the case. Insurance Co. v. Evants, 25 Tex. Civ. App. 300, 61 S. W. 536. The issue was not submitted to the jury. And it appears affirmatively from the record in this case that the court founded the judgment solely upon the verdict of the jury as to occupancy.

Since the judgment for loss of the dwelling cannot be sustained on the said finding of fact of the jury, and the parties are entitled to have a jury finding on the issue of waiver, the judgment is reversed and the cause remanded for trial on the whole case.