BRAMAN et ux. v. MUTUAL LIFE INS. CO. OF NEW YORK.

No. 9754.

Circuit Court of Appeals, Eighth Circuit.

Oct. 15, 1934.

Carl J. Eastvold, of Ortonville, Minn. (Murphy, Johanson, Winter & Nelson, of Wheaton, Minn., on the brief), for appellants.

M. J. Doherty, of St. Paul, Minn. (Doherty, Rumble & Butler, of St. Paul, Minn., on the brief), for appellee.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

Appellants, as plaintiffs below, brought this action to recover $5,000 upon an alleged life insurance policy insuring the life of their son, they being named as beneficiaries therein, it being alleged that the insured met his death by external, violent, and accidental means.

As a matter of convenience and to avoid confusion, the parties will be referred to as they appeared in the lower court.

The defendant denied in effect that any contract of insurance had ever been consummated and pleaded certain provisions of or recitals in the written application signed by insured, the correctness and existence of which were admitted by the reply filed by plaintiffs.

Plaintiffs' son, Glenn D. Braman, was solicited by Kenneth W. Stockton and Edward F. Gettman for an application of life insurance on December 13, 1931. Stockton was a soliciting agent of defendant, while Gettman was employed by another soliciting agent of defendant, McRae, to assist him in soliciting insurance, but he was not defendant's agent. An application for life insurance with double indemnity in case of accidental death was signed by Glenn D. Braman. There was testimony on behalf of plaintiffs, and as the court directed a verdict for the defendant, we must accept it as true, that Stockton and Gettman told plaintiffs, who were present at the time, and their son, that as soon as the premium was paid the insurance would be in effect, subject to the passing by the applicant of a satisfactory medical examination. There was testimony that in payment of the first premium Gettman was to take the note of Charles Braman, father of the applicant, discount it at the bank of which McRae was cashier and Gettman was assistant cashier, and send the money to the defendant company. Gettman agreed to accept the note at the bank and advance the money for the premium. Pursuant to this understanding, plaintiff Charles Braman gave his note to Gettman personally for the amount of the premium. This note Gettman held in his personal possession, but did not advance the money either to Braman nor the defendant, nor attempt so to do until after Glenn D. Braman was accidentally killed on December 21, 1931.

Glenn D. Braman was given a physical examination by defendant's local examining physician at Graceville, Minn., and the complete application with medical examiner's report was mailed to defendant's branch office at Sioux City, Iowa, December 18, 1931. The physical examination indicated that the applicant was an insurable risk. The papers were received at defendant's home office in New York City December 23, 1931, and on that date the application was approved by defendant's home office without knowledge of the prior death of applicant. In the meantime, on December 22, 1931, and after he had learned of the death of applicant, Gettman sent a draft for the amount of the first premium to the Sioux City office of defendant. This draft was returned to Gettman.

The application which was signed by Glenn D. Braman was on the printed form provided by the defendant, and recited that, "The proposed policy shall not take effect unless and until delivered to and received by the

Insured, the Beneficiary, or by the person who herein agrees to pay the premiums, during the Insured's continuance in good health and unless and until the first premium shall have been paid during the Insured's continuance in good health; except in case a conditional receipt shall have been issued as hereinafter provided."

Following this recital, appear fourteen paragraphs consecutively numbered. The first gives the residence, occupation, place of birth, and age of the applicant; the second contains a declaration that the applicant does not contemplate going to a foreign or tropical country or changing his occupation; the third recites that the applicant does not contemplate making aviation flights or aeronautical ascensions; the fourth, that the applicant has no negotiations for other life insurance; the fifth, that the applicant has never had an application for life insurance declined or postponed by any other company; the sixth, that he has no insurance now in force on his life in any other company. The seventh calls simply for details in relation to the four preceding paragraphs, and are all answered in the negative; the eighth gives the amount of the insurance applied for; the ninth gives the plan of insurance as two-year term, with automatic conversion to end age sixty-five, with level disability benefits, double indemnity benefits, and waiver of premium benefits; the tenth recites that if the company is unwilling to issue a policy for the plan and amount applied for, the application shall be for such plan and amount as shall be issued by the company; the eleventh gives the names of the beneficiaries; the twelfth reserves the privilege of changing the beneficiary to the applicant; the thirteenth refers to surrender values and dividends. The fourteenth is as follows:

"$———— in cash has been paid to the Soliciting Agent and a conditional receipt No. ————, signed by the Secretary of the Company, and countersigned by the agent has been issued making the insurance in force from this date, provided this application shall be approved."

Following the foregoing fourteen separately numbered paragraphs, the application contains provision that, "It is agreed that no Agent or other person except the President, Vice-President, a Second Vice-President, or a Secretary of the Company has power on behalf of the Company to bind the Company by making any promise respecting benefits under any policy issued hereunder or accepting any representations or information not contained in this application, or to make, modify or discharge any contract of insurance, or to extend the time for payment of a premium, or to waive any lapse or forfeiture or any of the Company's rights or requirements."

Testimony on behalf of plaintiffs was to the effect that the agent Stockton said he did not have his receipt book with him, and on that account he made out a receipt on a piece of paper, using for the purpose the back of a blank check or note, and this was delivered to applicant. This receipt was not produced at the trial, but proper foundation being laid, secondary evidence was received as to its contents. In substance, the receipt acknowledged receipt of the first annual premium, and recited that the policy would go into effect at once, or when the medical examination had been taken. It was not signed by the secretary of the company.

At the close of all the testimony, the court directed a verdict for the defendant, and from the judgment entered thereon this appeal has been perfected.

While there are numerous assignments of error, we think the substantial question presented is whether the court erred in directing a verdict for the defendant. It is broadly asserted in plaintiffs' brief that "the policy was in force at the time of the death of the assured, and the plaintiffs made out a case for the jury." If, by the policy, plaintiffs mean the final formal contract of insurance customarily issued by the defendant, it seems clear that that instrument as such could not have been in effect at the time of the death of the applicant because the application had not been approved by the company and the policy was not even in form executed until after that date. But to this plaintiffs say, "The plaintiffs' answer to that is that that was brought about by the defendant's own delay and that it was a ministerial act to write up and sign the policy and that the issuance and signature and delivery thereof did not depend upon any conditions precedent or subsequent; because all of the conditions required by the company and its agents had been complied with and fulfilled by the assured or the beneficiary." But it is to be noted that the application provides that the proposed policy shall not take effect unless and until delivered to and received by the insured, the beneficiary, or by the person who therein agrees to pay the premiums during the insured's continuance in good health. This was a condition precedent to the taking effect of the policy unless, as we shall later consider, there was effected a contract of present insurance. Jen-

sen v. New York Life Ins. Co. (C. C. A. 8) 59 F.(2d) 957; New York Life Ins. Co. v. McCreary (C. C. A. 8) 60 F.(2d) 355; Inter-Southern Life Ins. Co. v. McElroy (C. C. A. 8) 38 F.(2d) 557.

The exception to the above-noted conditions is stated as follows: "Except in case a conditional receipt shall have been issued as hereinafter provided." Was there a contract of interim insurance? This would seem to depend upon what authority was vested in the soliciting agent. The application signed by Glenn D. Braman recites that, "It is agreed that no Agent or other person except the President, Vice-President, a Second Vice-President, or a Secretary of the Company has power on behalf of the Company to bind the Company by making any promise respecting benefits under any policy issued hereunder or accepting any representations or information not contained in this application, or to make, modify or discharge any contract of insurance, etc."

These restrictions on the power of the agent, being contained in the application signed, were notice to the applicant of the lack of authority of the soliciting agent to make any contract of insurance except as authorized by the provisions of the application itself. New York Life Ins. Co. v. McCreary (C. C. A. 8) 60 F.(2d) 355; Jensen v. New York Life Ins. Co. (C. C. A. 8) 59 F.(2d) 957; Slocum v. New York Life Ins. Co., 228 U. S. 364, 33 S. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029; New York Life Ins. Co. v. Fletcher, 117 U. S. 519, 6 S. Ct. 837, 29 L. Ed. 934. Any contract of insurance other than that authorized by the application could be made or authorized only by the officers therein named, to wit, the president, vice president, a second vice president, or a secretary of the company. These restrictions upon the authority of the agent are binding upon the applicant unless violative of some valid statutory provision. Aetna Life Ins. Co. v. Moore, 231 U. S. 543, 34 S. Ct. 186, 58 L. Ed. 356; Jensen v. New York Life Ins. Co. (C. C. A. 8) 59 F.(2d) 957; Inter-Southern Life Ins. Co. v. McElroy (C. C. A. 8) 38 F.(2d) 557; New York Life Ins. Co. v. McCreary (C. C. A. 8) 60 F.(2d) 355.

It is therefore important to determine what authority to bind the company by a contract of interim insurance is conferred upon the soliciting agent by the application. All that is said on that subject is contained in the exception attached to the paragraph which precedes the numbered paragraphs in the application, and in paragraph 14 above quoted.

After reciting that the proposed policy shall not take effect until delivered to and received by the insured during his continuance in good health, and until the first premium shall have been paid, the following exception appears: "Except in case a conditional receipt shall have been issued as hereinafter provided." The only provision referring to a conditional receipt is that contained in paragraph 14. Either this paragraph 14 contains the conditions under which interim insurance might be effected, or the application confers no authority whatever upon the agent to effect such interim insurance. Accepting, therefore, this paragraph 14 as containing such conditions, it is observed that (1) the first premium must have been paid in cash to the soliciting agent; (2) a conditional receipt signed by the secretary of the company and countersigned by the agent must have been issued; and (3) the application must have been approved. These were all conditions precedent, compliance with which was required by the company before it agreed to become a present insurer. New York Life Ins. Co. v. McCreary (C. C. A. 8) 60 F.(2d) 355, and authorities there cited.

The premium was not paid in cash, but it is contended by plaintiffs that the soliciting agent, under the statutes of Minnesota as construed by the Supreme Court of that state, had authority to accept the promissory note of applicant's father in lieu of cash, in payment of the premium.

Section 3380, Mason's Minn. St. 1927, provides as follows:

"Any person who shall solicit an application for insurance upon the life of another shall, in any controversy between the assured or his beneficiary and the company issuing any policy upon such application, be regarded as the agent of the company and not the agent of the assured."

Section 3757, Mason's Minn. St. 1927, provides as follows:

"Every insurance agent or broker who acts for another in negotiating a contract of insurance by an insurance company shall be held to be the company's agent for the purpose of collecting or securing the premiums therefor, whatever conditions or stipulations may be contained in the contract or policy."

Without question these statutes determine the status of the agent. New York Life Ins. Co. v. McCreary (C. C. A. 8) 60 F.(2d) 355; Gill v. Mutual Life Ins. Co. (C. C. A. 8) 63 F.(2d) 967; Jensen v. New York Life Ins. Co. (C. C. A. 8) 59 F.(2d) 957; Hertz

v. Security Mutual Ins. Co., 131 Minn. 147, 154 N. W. 745.

Do these statutes go further than settling the question of status, and determine the extent of the scope of the authority of a soliciting insurance agent? The Supreme Court of Minnesota, referring to section 3757, supra, in Fredman v. Consolidated Fire & Marine Ins. Co., 104 Minn. 76, 116 N. W. 221, 223, 124 Am. St. Rep. 608, said:

"This section applies to agents, as well as brokers, and in so far as it refers to agents it does no more than declare the powers which they possess independent of the statute. A broker was generally held to represent the company for the purpose of collecting the premiums, but he probably had no power at common law to secure the payment of a premium; that is, he could not accept payment in anything but cash. But this statute gives the broker power to either collect or secure the premiums, and to this extent it enlarges his common-law powers. It is clear that the principal object which the Legislature had in view was to make ineffective provisions which were often inserted in policies to the effect that the broker or soliciting agent should be regarded as the agent of the insured, although the fact might be quite otherwise. But the statute does not make the broker the agent of the company for any purpose other than the collection or securing of the premium, and the inference from this express provision is that the agency is limited to the enumerated purposes. This construction is in harmony with the general notion of the business of the broker."

The Supreme Court of Minnesota has specifically held, in construing this statute, that a soliciting agent of an insurance company has authority to accept the promissory note of the insured in payment of the ordinary premium. Kilborn v. Prudential Ins. Co., 99 Minn. 176, 108 N. W. 861; Ikenberry v. New York Life Ins. Co., 127 Minn. 215, 149 N. W. 292. The construction placed upon the Minnesota statute by the Supreme Court of that state is, of course, binding on this court. Cargile v. New York Trust Co. (C. C. A. 8) 67 F.(2d) 585.

Even though the Minnesota statute, section 3757, supra, empowers the agent to make settlement by note or cash for the ordinary premium, and such action of the agent is binding on the insurance company notwithstanding the contract or stipulation of the parties to the contrary, yet it does not necessarily follow that this statute is so broad as to invade the power of the insurance company to insist upon the payment of a cash premium as a condition precedent in special cases, as where a soliciting agent, quite out of the ordinary course of business, may be authorized to make effective a contract of present insurance. In view of other questions involved, however, this point need not be determined. The applicant, however, did not receive a receipt signed by the secretary of the company and countersigned by the agent. Instead he received an informal receipt written out on the back of a blank check or promissory note, signed only by the soliciting agent. The only form of receipt which the agent, by the specific provisions of the application, was authorized to issue was one which had been signed by the secretary. It appears that the form of receipt actually authorized contains, among others, the following provision:

"If the application shall be unconditionally accepted and approved by the said Company, at its Head Office in the City of New York and if also the applicant, at the time of the giving of this receipt, is a good insurable risk under the Company's rules, the insurance so applied for shall date from the date of this receipt. In passing upon said application, the test shall be whether the applicant, at the time of the delivery of this receipt was a good insurable risk under the Company's rules. In case the application is not so unconditionally accepted and approved or should it be found that the applicant was not a good insurable risk under the Company's rules at the time of the giving of this receipt, then, and in each of such cases, no insurance shall be effected and it shall be understood and agreed that the Company declines the risk. If, within sixty days from the date of this receipt, the applicant shall receive no notice of the acceptance of the risk, he shall have the right to demand the return of the premium paid, upon the delivery of this receipt to the Company.

"This receipt is of no force and effect unless it is for the whole amount of the first premium called for in the proposed policy, nor unless such amount has been paid in cash to the soliciting agent whose name appears on the application. This receipt cannot be changed nor altered without the consent in writing of the President or Secretary of the Company, and must be countersigned by the soliciting agent. No person other than the President, Vice-President, a Second Vice-President, or Secretary can make, alter or discharge contracts or waive forfeitures."

This conditional receipt contained the contract, and the only contract, that defendant

396

offered for interim insurance. If the insured became ill during the time between the making of the application and the issuing of the policy, and had complied with the provisions of paragraph 14, and the application had been accepted before his death, the contract would have been effective even though the policy had not at that time issued. In Schwartz v. Northern Life Ins. Co. (C. C. A. 9) 25 F. (2d) 555, 558, the court said:

"A binding receipt, or binding slip, has a settled meaning in insurance law. It protects the applicant for insurance against the contingency of sickness intervening between its date and the delivery of the policy if the application for insurance is accepted."

■ The next condition contained in the application is, "provided this application shall be approved." The offer of the defendant was not for present insurance, but an agreement to insure at some future time, to wit, on the approval of the application. Up to the time of the approval of the application there was no contract of insurance, and the company reserved the right to approve or reject the application. As said by us in an opinion by Judge Woodrough in Brancato v. National Reserve Life Ins. Co., 35 F.(2d) 612, 613:

"Binding receipts substantially like the one relied upon by the appellant have received frequent consideration by the courts, and it is settled that the right reserved to the insurance company to accept or reject the application for insurance referred to in the receipt is absolute. Such binding receipts leave it within the power of the company wholly to reject, without giving any reason, and the whole subject, both affirmatively and negatively, is within its choice and discretion. The matter was elaborately considered by the Supreme Court in the early case of Mutual Life Ins. Co. v. Young's Administrator, 90 U. S. (23 Wall.) 85, 106, 23 L. Ed. 152 (1874), and we can find no departure in the federal decisions from the conclusions there announced. The form of receipt under consideration in that case was not different in substance from the one involved in the present case, and the court held concerning it that—'The receipt of the 5th of June was the initial step of the parties. It reserved the absolute right to the company to accept or reject the proposition which it contained.'"

To the same effect, see: Mohrstadt v. Mutual Life Ins. Co. (C. C. A. 8) 115 F. 81, 82; Paine v. Pacific Mutual Life Ins. Co. (C. C. A. 8) 51 F. 689, 692; Bradley v. New York Life Ins. Co. (C. C. A. 8) 275 F. 657; Aetna Indemnity Co. v. J. R. Crowe Coal & Min. Co. (C. C. A. 8) 154 F. 545.

■ The only authority which the soliciting agent had in connection with the writing of interim insurance or issuing a conditional receipt was that contained in the application, and the terms and conditions there specified were in effect read into whatever receipt was given. The approval of the company was a prerequisite to the consummation of any contract of insurance, and the approval of the application, even though followed by the issuance of the policy after the death of the applicant, and without knowledge thereof, was certainly of no effect. By the death of Glenn D. Braman the subject-matter of the contract of insurance ceased to exist. The instant case, in its facts, is very similar to that of Mohrstadt v. Mutual Life Ins. Co., supra. In that case a binding receipt was issued which contained provision that, "Said policy of insurance to take effect and be in force from and after the date hereof, provided the said application shall be accepted by the said company." Before the policy was delivered, the insured died. In considering the proper construction to be given the receipt, this court, speaking through Judge Thayer, said:

"The receipt, as it will be observed, contains the stipulation, 'said policy of insurance to take effect and be in force from and after the date hereof, provided the said application shall be accepted by said company.' The natural interpretation of this clause would seem to be that the word 'provided' was used, as it generally is, in the sense of 'if,' and that the risk was to take effect as of the date specified 'if' the application, on examination and approval at the home office, was accepted, and only in that event. When that was done the company was willing that the risk should commence as of the date of the receipt, although the execution of the policy, embodying all of the terms of the contract, might be delayed for a considerable period. The opposite construction of the receipt, above suggested, not only runs counter to the usual meaning of the words employed to express the agreement of the parties, but it in fact arms local agents with a power not usually intrusted to them,—to saddle the company with large liabilities for temporary insurance before the chief medical officers of the company have had any opportunity to examine and approve such risks. A receipt identical in form with the one now under consideration, and issued by the same company, was before the supreme court of the United States for construction in a case heretofore

cited (Mutual Life Ins. Co. v. Young's Adm'r, 90 U. S. [23 Wall.] 85, 106, 23 L. Ed. 152); and the court held, as we construe the opinion, that a receipt in such a form is not an absolute assumption of a risk temporarily (that is to say, until such time as the application is accepted or rejected), but that it is a qualified acceptance; the risk taking effect only in the event that the application is accepted, and that the company elects, after examining it, to issue such a policy as is applied for."

In Paine v. Pacific Mutual Life Ins. Co., supra, in which Judge Walter H. Sanborn wrote the opinion, the applicant died the day before the application reached the insurance company's home office where it was examined and approved in ignorance of the applicant's death. In the course of the opinion in that case it is said:

"The death of Kendall on June 3, 1890, before the application had reached defendant's home office, revoked his offer to become insured by the defendant company, which was contained in this application, and rendered the making of the proposed contract of insurance impossible. An offer is revoked by the death of the proposer, or by the death of the party to whom the offer is made before acceptance. * * *

"Conceding that the defendant could and did determine to accept the application on June 7, 1890, one day after its receipt and four days after the death of Kendall, still such acceptance and the contract, if so made, were void, because the life that was the subject-matter of the contract was not then in existence. The first party to this proposed contract was Kendall; the second, the defendant; the subject-matter of the contract, Kendall's life. The contract was not made, in any event, before June 7th, when defendant's medical director approved the application, and at that time the first party to it was dead, and its subject-matter did not exist. Neither party would have knowingly made an insurance contract regarding a life that was not in being. Parties make no contract where the thing which they supposed to exist, and the existence of which was indispensable to the making of their contract, had no existence."

The application for insurance in the instant case, being subject to approval by the insurance company, was in effect an offer which was revoked by the death of the applicant, and his death destroyed the subject-matter of the offer.

Something is said with reference to paragraph 14 of this application being in small type. An examination of the original application discloses that the same size type is used for all printed matter on the application, except the heading to the effect that "all questions to be answered by the person to be insured." The type is nonpareil 6 point type. The printed portion of the application which precedes the numbered paragraphs is the same size type but has a black face. The type of the entire instrument is such as is used in many papers, particularly in the publication of legal notices and is easily read. In any event, this is an action at law upon this contract, and not a suit to reform the instrument, nor is there any claim of fraud or misrepresentation. In this suit at law the instrument must be accepted as the contract of the parties.

It follows that no contract of insurance ever became effective, and the lower court properly directed a verdict for the defendant. The judgment appealed from should, therefore, be affirmed.