**Robert L. WALLACE, Respondent,**

v.

**TIME INSURANCE COMPANY, Defendant and Third Party Plaintiff, Appellant,**

v.

**John T. BURNS and Diversified Consulting Services, Inc., Third-Party Defendant.**

**No. C9–85–2025.**

Court of Appeals of Minnesota.

May 27, 1986.

Review Denied July 31, 1986.

John A. Masog, Park Rapids, for respondent.

Bruce C. Bromander, Minneapolis, for appellant.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

SEDGWICK, Judge.

Respondent Robert Wallace sued Time Insurance Company (Time) for breach of a contract of disability insurance. Time denied the existence of a contract. The case was submitted to the trial court on stipulated facts. The court found that an interim or conditional contract of insurance was created by implication of law. Summary judgment was entered for respondent. The trial court also awarded attorney fees to respondent. Time appeals.

## FACTS

Wallace applied for a home improvement loan in June 1978. Because Wallace was self-employed, the bank required that he obtain disability insurance to ensure repayment of the loan.

Wallace contacted John Burns, an insurance broker, to find out about available coverage. On July 27, 1978, Wallace completed an application for a combined policy of life and disability insurance and submitted the first month's premium to Burns. The application form provided that coverage would be effective as of the date the policy was issued by the company and received by the insured unless provided otherwise in a conditional receipt.

Wallace received a conditional receipt which provided:

NO INSURANCE WILL BECOME EFFECTIVE PRIOR TO POLICY DELIVERY UNTIL EACH AND EVERY CONDITION CONTAINED IN THIS RECEIPT IS MET.

\* \* \* \* \* \*

The conditions under which insurance \* \* may become effective prior to policy delivery are as follows:

1. The proposed insured must be, on the Effective Date as hereafter defined, a risk acceptable to the Company under its rules, standards and practices for the exact policy and premium applied for, without any modifications.
2. The amount of the payment taken with the application must be equal to the amount of the full first premium \* \* \*.
3. The policy is issued exactly as applied for within 60 days from the date of the application.

If each and every one of the above conditions shall have been fulfilled, then insurance as provided by the terms and conditions of the policy applied for will become effective prior to policy delivery.

\* \* \* \* \* \*

Effective Date as used herein:

means the later of (a) the date the application is signed, (b) the date of completion of all medical examinations, if required, and (c) the Requested Policy Date shown on the application \* \*.

\* \* \* \* \* \*

If one or more of the conditions is not met, the liability of the Company will be limited to the return of the sum received.

On August 2, 1978, Wallace was involved in an auto accident. On August 3, Time sent a letter to Burns stating that a medical examination was required before a policy could be issued. After learning of Wallace's accident on August 16, Time refunded the premium payment on August 18. Wallace submitted to physical examinations on August 24, 1978, and September 22, 1978. Both examinations indicated that he was uninsurable.

At trial, Wallace successfully argued that the conditional receipt, together with payment of the first month's premium, resulted in an interim contract of insurance implied in law. The trial court found that the contract was in effect from the date of the application, July 27, 1978. Accordingly, it ordered that Time pay Wallace disability benefits according to the policy provisions.

## ISSUE

Did the trial court err in finding that an interim contract of insurance was created by implication of law?

## ANALYSIS

Minnesota courts have not specifically addressed the effect of conditional receipts on the rights and obligations of the parties. The trial court relied on two cases to conclude that an interim contract of insurance was created by implication of law: *Damm v. National Insurance Co. of America,* 200 N.W.2d 616 (N.D.1972) and *Usher v. Allstate Insurance Co.,* 300 Minn. 52, 218 N.W.2d 201 (1974).

In *Usher,* the applicant completed an application for health insurance and submitted the first premium on the same day. The application provided that insurance

would be effective on the date stated in the policy. Thirty-six days after her application, she was hospitalized and eventually died. When the insurer learned of the hospitalization, it refunded the premium and refused to issue a policy.

The supreme court reversed the trial court's grant of summary judgment for the insurer because the evidence could have supported a finding of implied contract of interim insurance and breach. The court noted that the language regarding effective date of the policy was ambiguous and should be construed against the insurer. *Id.* at 56, 218 N.W.2d at 204. There was enough evidence for a jury to find that all the conditions of the application were satisfied and that a policy would have been issued had the insurer not learned of the applicant's hospitalization. *Id.* Thus, summary judgment was improper.

This case is distinguishable from *Usher*. *Usher* was premised on the notion that the insurer's conduct was inequitable and the fact that the policy language was ambiguous. The *Usher* court did not want to allow the insurer to escape liability because of its own delay in issuing a policy. It appeared that a policy would have been issued if the insurer had not learned of the applicant's hospitalization. There is no indication here of any inequitable conduct. Nor is there ambiguity in the language of the receipt. The receipt clearly provides that coverage would be effective from the date of the application or the date of the medical examination, *whichever was later.* Thus, because Wallace's injury occurred prior to the medical examination, there was no coverage.

The North Dakota case relied on by the trial court involved an application for life insurance. *See Damm v. National Insurance Co. of America,* 200 N.W.2d 616 (N.D.1972). The applicant submitted an application, paid the first premium, and received a conditional receipt. The receipt stated that if the first premium was paid the insurer's liability would be as provided in the receipt. The receipt provided that coverage would be effective as of the date

of the receipt or on completion of the medical examination, if required, whichever was later. In addition, the applicant must have been an acceptable risk to the company.

The applicant never had a physical examination. No policy was ever issued. Nearly six months after the application date, the applicant was killed in an accident. After learning of the applicant's death, the insurer refunded the premium and sent a letter informing him that his application had been filed in a "non-complete" file because there had been no medical examination.

The North Dakota court adopted the "modern view" as expressed in *Etheridge v. Woodmen of the World Life Insurance Society,* 114 Ga.App. 807, 152 S.E.2d 773 (1966), *rev'd,* 223 Ga. 231, 154 S.E.2d 369 (1967). The Georgia Court of Appeals viewed the conditional receipt as issued for a separate consideration, not as part of the application. The court identified two severable offers: (1) an offer by the applicant to purchase insurance, and (2) an offer by the insurer to provide interim coverage pending action on the application. The applicant accepts the insurer's offer by paying the premium in advance.

Applying the *Etheridge* rationale, the North Dakota court held that the conditional receipt in *Damm* created an interim insurance contract subject to the condition that the applicant was not, on the date of the receipt, an acceptable risk. Thus, because the insurer had not rejected the application before the applicant's death and had not proved that the applicant was an uninsurable risk on the date of the receipt, the company was liable.

The condition subsequent theory adopted by the North Dakota court in *Damm* is not applicable to the facts of this case. One of the main concerns underlying that rule is that the insurer has the use of the insured's premium payment and has no incentive to act promptly on the application. Here, the premium payment of less than $30 was not a significant benefit to the insurer or deprivation of the applicant. The insurer also acted promptly in notifying the agent that a medical examination

was required and thus was processing Wallace's application within a reasonable time.

We are guided by *LaFavor v. American National Insurance Co.*, 279 Minn. 5, 155 N.W.2d 286 (1967), and general principles of insurance contract interpretation.

*LaFavor* involved an application for health insurance. The applicant completed the application and paid the first month's premium in January. In February, she gave the agent another monthly premium. Later that month the applicant was hospitalized. During her hospitalization, she submitted a third premium to the agent.

The application in *LaFavor* stated that no liability would be assumed by the company (other than for refund of the premium) until a policy was issued. A policy was never issued. It appears that the application was never sent to the home office for approval.

The supreme court reversed the trial court's judgment for the applicant. Noting that the circumstances were unfortunate, the court nonetheless interpreted the language of the application literally and found that there was no contract because no policy had been issued. *Id.* at 12, 155 N.W.2d at 291.

When language of an insurance policy is unambiguous, it must be given its plain and ordinary meaning; unambiguous language will not be construed in favor of finding coverage. *Firemen's Insurance Co. v. Viktora*, 318 N.W.2d 704, 706 (Minn.1982) (citation omitted). The unambiguous language of this conditional receipt compels the conclusion that there was no coverage effective prior to issuance of a policy because Wallace was not an acceptable risk to the company on the date of the medical examination.

## DECISION

The trial court's decision awarding disability benefits to respondent is reversed. Because we reverse the finding of coverage, we also reverse the award of attorney fees.