**Colin K. GLARNER, Respondent,**

v.

**TIME INSURANCE COMPANY, Appellant.**

**No. CX–90–1674.**

Court of Appeals of Minnesota.

Jan. 29, 1991.

Review Denied April 18, 1991.

Eugene J. Crosby, Faribault, for respondent.

Richard P. Mahoney and Victor E. Lund, Mahoney, Dougherty & Mahoney, Minneapolis, for appellant.

Considered and decided by GARDEBRING, P.J., and RANDALL and DAVIES, JJ.

DAVIES, Judge.

## OPINION

Appellant contends the trial court erred when it found that an implied contract for interim health insurance existed and ordered summary judgment in favor of the respondent, and in awarding respondent $9,521.00 in attorney's fees.

We affirm in part, but reverse as to attorneys fees.

## FACTS

Respondent, Colin K. Glarner, employed by Independent School District No. 656, was scheduled to retire June 1, 1988. Lawrence K. Vassar, an insurance salesman, sold policies for appellant, Time Insurance Company. Vassar, aware of respondent's impending retirement, contacted respondent concerning health care insurance following retirement. Vassar persuaded respondent to complete a health insurance application that was submitted to Mid–America Mutual on or about May 1, 1988. On May 18 Mid–America Mutual denied respondent's application due to blood pressure readings.

On May 31 Vassar completed a second application for respondent and submitted it to appellant. The application disclosed that Mid–America Mutual had denied the previous application due to blood pressure readings, requested a policy date of June 1, 1988, and included respondent's check for $131.12 as payment of the first quarter premium. Appellant negotiated respondent's check on June 15, 1988. Vassar assured respondent that the application would be approved.

Vassar, on behalf of appellant, executed a conditional receipt for the premium payment. The conditional receipt stated:

No insurance will become effective prior to policy delivery. Except, insurance may become effective prior to the policy delivery if and when each and every condition contained in this receipt is met. No agent or broker of the Company is authorized to alter or waive any of the following conditions:

\* \* \* \* \* \*

The conditions under which insurance, for which payment(s) under Life and/or Health above is intended, may become effective prior to policy delivery, are as follows:

1. The Proposed Insured(s) must be, on the Effective Date, as HEREAFTER DEFINED, a risk acceptable to the Company under its rules, standards and practices for the exact policy and premium applied for, without any modification.

2. The amount of the payment taken with the application must be equal to the amount of the full first premium payment selected.

3. The policy is issued exactly as applied for within 60 days from the date of the application. If the policy is not issued within 60 days from the date of application, then this condition has not been fulfilled and there will be no cover-

age provided under the terms of this conditional receipt. Any coverage provided by the Conditional Receipt ends when the policy is delivered.

If each and every one of the above conditions shall have been fulfilled, then the insurance as provided by the terms and conditions of the policy applied for will become effective on the Effective Date prior to the policy delivery. The total amount of insurance (life insurance, accidental death benefit and principal sum benefits under health insurance) which may become effective prior to the policy delivery shall not exceed $100,000.

"Effective Date" as used herein means the later of: a) the date the application is signed; b) the date of completion of all medical examinations, if required; and c) the Requested Policy Date shown on the application by the Company.

If one or more of the conditions are not met, the liability of the Company will be limited to the return of the sum received.

On July 6, 1988, appellant directed Mary Erpenbach, a paramedic, to conduct an examination of respondent for blood pressure, height, and weight readings. The exam was completed on July 7 and the results were forwarded to appellant on July 8. No further request for a medical examination was made by appellant.

Respondent suffered a heart attack on July 14, 1988. Between July 14 and July 25 respondent incurred approximately $29,-000 in medical expenses. Respondent immediately submitted all medical bills to appellant for payment. On August 16 appellant informed respondent by letter that he was not accepted for coverage, but the letter rejecting respondent's coverage provided no specific reason for appellant's action. Appellant never delivered the health insurance policy to respondent. On August 22, 1988, appellant refunded the $131.12 premium to respondent.

On August 29, 1989, respondent served a complaint on appellant, Time Insurance Company, alleging a breach of contract and requesting the court to adjudge: that an implied contract for interim health insurance existed; that appellant, as insurer, is responsible for respondent's medical bills incurred during the period of interim insurance; and that respondent be awarded costs, disbursements, and attorney's fees. Appellant did not answer the complaint, but instead, on September 27, 1989, moved the court to dismiss for failure to state a claim pursuant to Minn.R.Civ.P. 12.02.

On October 10, 1989, respondent moved the court for summary judgment. The trial court consolidated the motion to dismiss and the motion for summary judgment. Both parties submitted briefs and made oral arguments. The respondent submitted additional affidavits, but the appellant offered no evidence, relying on its position that the complaint was insufficient to sustain a claim.

## ISSUES

I.a. Did the trial court correctly grant summary judgment implying interim insurance coverage by law where the insurer's conditional receipt made interim coverage illusory?

b. Was there a material factual dispute as to the insurability of respondent at the time the premium was paid and the conditional receipt issued?

II. Did the trial court err by awarding attorneys fees to respondent when no evidence of bad faith by appellant was entered into the reward?

## ANALYSIS

### I.

On appeal from a summary judgment this court determines whether any genuine issue of material fact exists and whether the trial court erred in its application of the law. *Lee v. Metropolitan Airport Com'n,* 428 N.W.2d 815, 819 (Minn.App.1988). Summary judgment should be granted only when it is clear that no material fact issues are involved. *Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn.1981). This court must view the evidence in the light most favorable to the non-moving party and resolve all doubts or factual inferences against the moving party. *Id.* A party opposing a motion for summary judgment

"must present specific facts showing genuine issues for trial." *Marose v. Hennameyer*, 347 N.W.2d 509, 511 (Minn.App. 1984).

### The Question of Law

The appellant argues that no coverage existed because no policy was delivered to respondent as required by "condition 3" of the conditional receipt.

The interpretation and construction of an insurance policy is a matter of law. As such, this court may determine whether the trial court properly interpreted and applied the law to the facts presented. *State Farm Mutual Automobile Ins. Co. v. Budget Rent–A–Car Systems, Inc.*, 359 N.W.2d 673, 675–76 (Minn.App.1984) (citation omitted). Therefore, the interpretation of "condition 3" of the conditional receipt is an appropriate subject for our further review.

Conditional receipts can be categorized into three types. First, the approval type provides that the policy takes effect at a certain date, but with the added proviso that the application must be accepted by the company. There is no contract without company acceptance. Second, the condition precedent type of receipt creates an immediate contract, but coverage does not take effect until the company is satisfied that the risk is acceptable. The effect of these two types of receipts is to offer illusory coverage and to give a company a premium for a period of time during which the applicant remains more or less uninsured. A third type of conditional receipt, the condition subsequent type, provides coverage starting upon payment, but it permits the company to *terminate* coverage effective upon a determination that the risk is unacceptable. *See e.g.*, W. Young & E. Holmes, Cases and Materials on the Law of Insurance, 563 (2nd ed. 1985) (citing *Simses v. North American Co. for Life & Health Ins.*, 175 Conn. 77, 394 A.2d 710, (1978)).

 "Condition 3," as applied by appellant, amounts to an approval, or illusory, type of conditional receipt. The condition provides that coverage will take effect upon delivery of the applied for policy; delivery of the policy only follows approval of the application by the company. Condition 3, as interpreted by appellant, gives appellant full claim to respondent's premium payment without its incurring any liability during the interim period.

An alternative interpretation of condition 3 is that coverage under the conditional receipt is valid for 60 days *or* until the policy is delivered *or* refused, whichever comes first. This alternative interpretation (condition subsequent) is supported by the last sentence of the clause: "[a]ny coverage provided by the Conditional Receipt ends when the policy is delivered." Under appellant's interpretation, since no coverage ever exists under the conditional receipt, coverage could not "end"; such an interpretation makes the last sentence superfluous. A layman reading the last sentence of "condition 3" could reasonably assume *interim* coverage would exist if "condition 1" and "condition 2" were met.

> The general rule in Minnesota is that *any reasonable doubt* as to the meaning of the language of an insurance policy *must* be resolved in favor of the insured.

*Columbia Heights Motors Inc., v. Allstate Ins. Co.*, 275 N.W.2d 32, 36 (Minn.1979) (emphasis added). "Condition 3," at best, is ambiguous as a matter of law and, therefore, the interpretation favorable to the insured must control.

 Even if the clause were given the interpretation asserted by the appellant, however, coverage would have to be found in favor of the respondent because, as interpreted by appellant, the clause is unconscionable.

 "Unconscionability is a question of law * * *." *RJM Sales & Marketing Inc. v. Banfi Products Corp.*, 546 F.Supp. 1368, 1375 (D.Minn.1982).

> A contract is unconscionable if it is "such as no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other."

*Overholt Crop. Ins., Service Co., Inc. v. Bredeson*, 437 N.W.2d 698, 702 (Minn.App. 1989) (quoting *In re Estate of Hoffbeck,*

415 N.W.2d 447, 449 (Minn.Ct.App.1987) *pet. for rev. denied* (Minn. Jan. 28, 1988) (other citation omitted)). As interpreted by appellant "condition 3" creates an *illusory* promise of interim coverage.

It must be borne in mind that an insurance contract is a contract of adhesion. The parties to the contract have unequal bargaining power and the insurance contract is offered on a "take it or leave it" basis. [*Atwater Creamery Co. v. Western National Mutual Ins. Co.,* 366 N.W.2d 271, 277 (Minn.1985)]. Consequently, restrictive language is to be construed against the insurance company which drafted the policy and in favor of the insured. *Canadian Universal Ins. Co., Ltd. v. Fire Watch, Inc.,* 258 N.W.2d 570, 572 (Minn.1977). Likewise, exclusions in insurance contracts are read narrowly against the insurer. *Atwater Creamery Co.,* 366 N.W.2d at 276.

*Wondra v. American Family Ins. Group,* 432 N.W.2d 455, 459 (Minn.App.1988) *pet. for rev. denied* (Minn. Jan. 25, 1989). Where a contract clause is found unconscionable, a court may "remove the unconscionable clause or limit its application to avoid an unfair result." *Hoffbeck,* 415 N.W.2d at 449.

■ Finally, the issue here may be approached as one of reasonable expectations.

In an attempt to avoid the mechanical and sometimes unrealistic function of * * * competing rules of construction the Minnesota Supreme Court adopted the reasonable expectations doctrine * * *.

*Morris v. Weiss,* 414 N.W.2d 485, 488 (Minn.App.1987). "Determination of reasonable expectation of coverage presents a question of law and thus we are not foreclosed from considering this issue on appeal." *Schmidt v. St. Paul Fire & Marine Ins. Co.,* 376 N.W.2d 237, 239 (Minn.App. 1985). Respondent had every reasonable expectation that the conditional receipt for his premium payment would provide some coverage until the policy was delivered.

Appellant relies on *Wallace v. Time Insurance Co.,* 387 N.W.2d 468 (Minn.App. 1986) *pet. for rev. denied* (Minn. July 31, 1986), to support its argument. Appellant's reliance on *Wallace* is misplaced even though the same conditional receipt was at issue there as in the present case. *Wallace* does not stand for the proposition that appellant's conditional receipt as written is lawful in its entirety; *Wallace* was decided on the question whether the language of the conditional receipt requiring an applicant to be an acceptable health risk on the effective date of coverage (condition 1) was ambiguous. *See Wallace,* 387 N.W.2d at 470.

Wallace had applied for health insurance and received the conditional receipt upon payment of the first premium. Only five days later, he was involved in a car accident requiring hospitalization. The next day Time Insurance Company requested a medical examination before the policy would be issued. Wallace submitted to two medical examinations on August 24, 1978, and September 22, 1978. Both examinations showed Wallace uninsurable. Summary judgment for Wallace was reversed on appeal because Wallace, on the facts, was not an insurable risk on the date designated as the effective date (the date of the exam) so condition 1 of the conditional receipt was not satisfied. This court ruled

there was no coverage effective prior to issuance of a policy because Wallace *was not an acceptable risk* to the company on the date of the medical examination.

*Id.* at 471 (emphasis added).

Wallace, a condition 1 case, does not control this condition 3 case.

### No Issue of Fact

■ Appellant here failed to properly raise a factual dispute at the hearing below regarding condition 1, respondent's insurability. Appellant now argues that a factual dispute exists, but at the hearing below appellant submitted *nothing* to the court on the issue of respondent's insurability at the time of the application or at the time of the Erpenbach exam. Appellant's only allusion to the issue was the statement in its memorandum in opposition to summary judgment that respondent had failed to

present evidence of his being an insurable risk. In his complaint and affidavit, respondent presented below a prima facie case of insurability when he submitted to the court the fact of his height, weight, and blood pressure examination and that the appellant received the results without further comment or requests for additional tests. The fact that appellant accepted the results without further comment or a request for additional tests establishes a prima facie case that respondent was found to be an acceptable risk. Since respondent presented a prima facie case of his insurability, the burden shifted to appellant to show that a factual dispute existed.

 Appellant was in sole possession of the rules, standards, and practices for determining whether respondent was an acceptable risk. Appellant had everything it needed to present evidence on the issue of insurability at the hearing below, but it offered *no* evidence whatsoever. Minn.R. Civ.P. 56.05 provides:

When a motion for summary judgment is made and supported as provided in Rule 56, *an adverse party* may not rest upon the mere averments or denials of the adverse party's pleading but *must present specific facts* showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Minn.R.Civ.P. 56.05 (emphasis added).

This portion of the rule is designed to require defending parties to produce facts in support of their pleading allegations. An adverse party may not rely on allegations or denials in a pleading to create fact issues. A party must specifically identify the existence of triable issues of fact beyond pleading allegations.

\* \* \* \* \* \*

While disagreement over a material issue of fact is the crux of [a] case, appellant's unfortunate failure to present any evidence to support the * * * claims presented in his [argument] precludes the finding of any factual basis for his claims. Summary judgment is proper under these circumstances.

*Bush v. City of Lakefield,* 399 N.W.2d 169, 172 (Minn.App.1987) *pet. for rev. denied* (Minn. March 18, 1987) (citations omitted). Since appellant presented *no evidence* below that it found appellant an unacceptable risk under its rules, standards, and practices, there was no factual dispute below as to respondent's insurability which would have precluded summary judgment.

The summary judgment in favor of respondent, holding that the conditional receipt provided interim insurance coverage, was correct as a matter of law.

II.

In his complaint, respondent asked the court to adjudge attorney's fees pursuant to Minn.Stat. § 549.21. The order of the trial court granting respondent summary judgment also awarded him attorney's fees without specifying the amount. Respondent moved the court for a determination of the amount of the attorney's fees. The trial court determined that $9,521.00 in attorney's fees should be awarded respondent.

 We have stated:

Attorney[ ] fees are not recoverable absent authorization by a statute or by contract. State law, however, codifies an exception to the general rule [in Minn. Stat. § 549.21].

*Merchants and Miners State Bank v. Spal Enterprise,* 391 N.W.2d 20, 22 (Minn.App. 1986) *pet. for rev. denied* (Minn. Sept. 22, 1986).

Costs and attorney fees may be awarded against a party who acts in bad faith, asserts a frivolous claim or unfounded position or commits a fraud upon the court.

*Bank of Elbow Lake v. First State Bank of Ashby,* 439 N.W.2d 53, 56 (Minn.App. 1989) (citing Minn.Stat. § 549.21, subd. 2 (1988) *pet. for rev. denied* (Minn. July 12, 1989)).

Section 549.21 is applicable *only* where the bad faith occurs with respect to the litigation itself, not with respect to the underlying cause of action.

598

*Elbow Lake,* 439 N.W.2d at 56. (Emphasis added.)

■ The respondent *failed to present any evidence* below that appellant acted in bad faith in any way with respect to the litigation. *See e.g., Mary Ann Uselman et al. v. Jerry L. Uselman et al.,* 464 N.W.2d 130, 140 (Minn.1990). His request for attorney's fees was simply pro forma and nonspecific as to any basis for justification. "A denial of liability cannot alone constitute an 'unfounded defense' [or bad faith]" *Gary Builders Supply, Inc. v. Menard, Inc.,* 378 N.W.2d 98, 101 (Minn.App.1985). Furthermore, the trial court's award of attorney's fees is silent as to what bad faith on the part of appellant may have justified the award.

"An award of attorney[ ] fees under the statute may only be upset upon a finding of abuse of discretion by the trial court." *Wicker v. City of Maplewood,* 386 N.W.2d 327, 329 (Minn.App.1986) (citation omitted). The trial court made no finding of bad faith by the appellant, and further, there was nothing introduced into the record establishing any bad faith by appellant. Therefore, the trial court abused its discretion by awarding attorney's fees under Minn.Stat. § 549.21, subd. 2.

## DECISION

The conditional receipt given by appellant to respondent in exchange for payment of premiums included an unconscionable condition precedent to interim insurance coverage. The condition precedent allowed the appellant to receive payment without incurring liability during the interim period between the application for coverage and delivery of the policy and is invalid. No factual issue was raised at the hearing below concerning the respondent's health and insurability and therefore summary judgment is affirmed. The attorney's fees award to respondent is reversed because the record is devoid of evidence of bad faith by appellant in the litigation below.

Affirmed in part, reversed in part.