Mary M. HEIDEMAN, Appellant,

v.

**NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY,**
Respondent.

No. C0–95–2206.

Court of Appeals of Minnesota.

April 30, 1996.

Review Denied June 7, 1996.

Ernest A. Lindstrom, Paul A. Lindstrom, Lindstrom Law Offices, Minneapolis, for appellant.

Julie Anne Fleming–Wolfe, Ann M. Kraemer, Popham, Haik, Schnobrich, & Kaufman, Ltd., Minneapolis, for respondent.

Considered and Decided by RANDALL, P.J., and LANSING and KLAPHAKE, JJ.

## OPINION

RANDALL, Judge.

The district court granted summary judgment to respondent holding that no contract for life insurance was in existence at the time of the applicant's death. We affirm.

## FACTS

The material facts are not in dispute. On October 24, 1994, Dr. Gerald L. Heideman completed an application for group term life insurance through respondent, Northwestern National Life Insurance Company (NWNL). The form was captioned SPECIAL "EASY

ACCEPTANCE" OFFER TERM LIFE INSURANCE PLAN. The offer was extended to members of the Minnesota Medical Association. Dr. Heideman mailed the completed form, along with the first premium payment of $66, to the Administrator of the Minnesota Medical Association Group Insurance Program. Six days later, on October 26, 1994, Dr. Heideman died.

Respondent did not receive word of Dr. Heideman's death and proceeded to consider and approve his application for life insurance. NWNL listed the effective date of the policy as November 4, 1994. NWNL then sent a Certificate of Insurance to Dr. Heideman. Mrs. Heideman received the information at her home on November 16, 1994. On January 6, 1995, Mrs. Heideman wrote to NWNL informing the company that Dr. Heideman had died. In addition, she requested NWNL "refund the difference to her." NWNL refunded Mrs. Heideman the amount of the first premium payment. Approximately one month later, Mrs. Heideman, through counsel, demanded the proceeds under the policy. NWNL denied Mrs. Heideman's claim.

Mrs. Heideman filed suit in Rice County District Court. Both parties moved for summary judgment. The district court granted summary judgment in favor of NWNL holding that no contract for insurance existed. The district court reasoned that the form completed by Dr. Heideman was an offer requiring acceptance by NWNL before a valid contract would exist. The district court concluded that the earliest possible date of coverage was November 16, 1994, when NWNL first indicated its acceptance of Dr. Heideman's application. Mrs. Heideman appeals.

## ISSUES

1. Whether a contract for life insurance existed between Dr. Gerald L. Heideman and Northwestern National Life Insurance Company on the date of Dr. Heideman's death?

2. Was decedent afforded interim life insurance where he was not provided a conditional or premium receipt?

## ANALYSIS

Summary judgment is appropriate when the parties do not dispute material facts and a determination of the applicable law will resolve the controversy. *Boulevard Del, Inc. v. Stillman*, 343 N.W.2d 50,52 (Minn.App.1984). Construction and interpretation of the language in an insurance contract is a question of law. *S.G. v. St. Paul Fire & Marine Ins. Co.*, 460 N.W.2d 639, 642 (Minn.App.1990), *review denied* (Minn. Nov. 28, 1990). Questions of law may be reviewed de novo, and the reviewing court need not give deference to a decision of the district court. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). Here, the material facts are not in dispute. The issues revolve solely around the construction and interpretation of the language in the application for group term life insurance completed by Dr. Heideman. Thus, this court's review is de novo.

### I.

*Did this application constitute a mutual contract?*

Appellant maintains that NWNL and the district court erroneously denied her life insurance benefits under the policy applied for by her late husband, Dr. Heideman. Appellant argues that the application for life insurance completed by her husband constituted a unilateral offer by NWNL that was accepted by Dr. Heideman when he completed and mailed the application form, along with a check for the first premium, to the plan administrator.

Appellant tries to base an argument on the language of the application form and the promotional literature accompanying it. The application form is captioned, **SPECIAL "EASY ACCEPTANCE" OFFER**. The promotional literature reads, in part:

The MMA Group Insurance Program—is making an offer you won't want to miss ... All this protection is available to you on a special, easy acceptance basis. This means NO long forms to complete ... NO complicated health questions to answer ...

this offer is good for a limited time only, so don't delay.

It states further:

> Acceptance into this Plan is easy as long as you are not already participating in the Plan and you can answer "No" to the health question on the simplified application form.

Appellant argues this language constitutes an offer by respondent that was accepted by Dr. Heideman when he completed and mailed the application form.

Generally, under Minnesota law, an application for life insurance is an offer that, like any other offer, does not become a contract until accepted by the insurance company. *Frank v. Illinois Farmers Ins. Co.*, 336 N.W.2d 307, 310 (Minn.1983). The power of acceptance lies with the insurance company, and without its assent or acceptance, no valid contract exists. *Sawyer v. Mutual Life Ins. Co.*, 166 Minn. 207, 207 N.W. 307, 308 (1926). Under ordinary contract principles, "acceptance is a manifestation of assent to the offer, as evaluated under an objective standard." *Travelers Ins. Co. v. Westridge Mall Co.*, 826 F.Supp. 289, 292 (D.Minn.1992), *aff'd*, 994 F.2d 460 (8th Cir.1993). Here, it is undisputed that between October 20, 1994, the date on which Dr. Heideman completed the insurance application, and October 26, 1994, the date on which he died, respondent did not initiate any communication with Dr. Heideman. Nor is there any evidence that Dr. Heideman's application was received, examined, marked approved, and simply sitting on someone's desk on or before October 26. Appellant failed to show any assent to Dr. Heideman's offer by NWNL prior to his death other than her characterization of the application itself being both the offer and the acceptance once filled out.

Appellant characterizes the form completed by Dr. Heideman as a unilateral offer by respondent so that the power of acceptance is shifted to Dr. Heideman and all other applicants. By characterizing the application as a firm unilateral offer and shifting the power of acceptance to Dr. Heideman, appellant argues that a contract for life insurance came into being as soon as he filled out the application and put it in the mailbox.

The district court concluded no contract was formed because respondent failed to express its assent to Dr. Heideman's application before his death. We agree. We find appellant's argument unpersuasive given the general rule that an application for insurance is an offer requiring the acceptance of the insurance company. *Frank*, 336 N.W.2d at 310 ("An application for insurance is merely an offer; no contract arises until the application is accepted by insurer and all conditions precedent are complied with."); *Olson v. American Central Life Ins. Co.*, 172 Minn. 511, 216 N.W. 225, 226 (1927) ("It is well settled that an application for life insurance is a mere proposal and like any other offer does not become a contract until accepted."). This case presents no unusual facts requiring us to form another rule.

The language in the application caption and the promotional literature is not unusual and merely communicates that acceptance into the life insurance plan is easy, not that it is guaranteed. The promotional literature simply states, "[t]his offer is designed to make it easy for you to apply." Nowhere in the application, nor the accompanying literature, does it say that acceptance is guaranteed merely by completing the application form and mailing it in to NWNL. Although the application requirements were minimal, Dr. Heideman was still required to answer "no" to the medical question and submit the completed application to NWNL for underwriting approval.

Moreover, Dr. Heideman's signature appears directly below the following statement

> I understand and agree that no coverage shall take effect unless this application *is approved by NWNL* and the first premium is paid during my lifetime.

> I understand my coverage begins on the effective date *assigned by NWNL*.

(Emphasis added.)

This language would not justify Dr. Heideman in concluding that his assent at home, without communication to NWNL, would conclude the deal. The language of the application makes it clear that approval by NWNL is required.

NWNL further argues that the above language sets forth two conditions precedent that must be satisfied before any contract for life insurance can be formed and that Dr. Heideman failed to meet a condition precedent. When an application for life insurance provides that the insurance shall not take effect unless certain conditions are satisfied, such as approval of the application by the insurance company, no contract of insurance exists unless those conditions are satisfied. *Olson,* 172 Minn. at 511, 216 N.W. at 227; *Radunz v. Farm Bureau Life Ins. Co.,* 431 N.W.2d 562, 565 (Minn.App.1988). Here, the conditions precedent require that Dr. Heideman's application be approved, and the first premium payment be paid during Dr. Heideman's lifetime. Although Dr. Heideman did pay the first premium during his lifetime, his application was not approved by NWNL until November 4, 1995, approximately nine days after his death. It was approved in the normal course of business and no evidence was presented, nor is there any inference, that approval of Dr. Heideman's application was delayed by way of clerical error, fraud, or bad faith. Therefore, Dr. Heideman failed to fulfill the necessary conditions precedent required to conclude this particular life insurance contract.

Finally, Dr. Heideman's death terminated NWNL's power to accept his application. The *Restatement (Second) of Contracts* § 48 (1981) provides that,

An offeree's power of acceptance is terminated when the offeree or offeror dies or is deprived of legal capacity to enter into the proposed contract.

Where an applicant for life insurance dies before the application is accepted by the insurance company, the offer for life insurance is revoked because the subject matter of the offer is destroyed. *Braman v. Mutual Life Ins. Co.,* 73 F.2d 391, 397 (8th Cir.1934). We conclude that Dr. Heideman's application was revoked by reason of his death and that any attempt to claim assent to it by NWNL is legally void. NWNL, without fault, failed to assent or accept Dr. Heideman's offer during his lifetime. Unless otherwise provided for, an application for insurance is an offer by the applicant that must be assented to by the insurer during the lifetime of the applicant for a valid contract for life insurance to exist. Here, no contract for life insurance ever came into being. NWNL did not agree to insure Dr. Heideman before his death.

The district court properly concluded that no valid contract for life insurance ever came into being between Dr. Heideman and NWNL.

## II.

### *Conditional receipt and interim coverage*

Appellant argues that interim life insurance coverage was extended to Dr. Heideman through "premium receipts." That is, Dr. Heideman's payment of the first insurance premium constituted a premium receipt affording him interim coverage.

A premium receipt, also known as a conditional receipt, is an instrument that affords insurance coverage to an applicant between the date of application and the actual issuance of the policy. *See Grandpre v. Northwestern Nat'l Life Ins. Co.,* 261 N.W.2d 804, 806 (S.D.1977). The South Dakota Supreme in *Grandpre* observed that

[t]he conditional receipt is a sales device instituted by the life insurance industry whereby a life insurance company would warrant coverage upon payment of the initial life insurance premium at the time of application and the satisfaction of various conditions precedent to coverage.

\*     \*     \*     \*     \*     \*

It also usually provides temporary insurance to the applicant while the company is determining the applicant's insurability and consequently, any subsequent change in the applicant's condition (i.e., death or his becoming uninsurable) will not result in lack of coverage if the company has determined that he was insurable at the time of the application.

*Id.*

Appellant cites numerous cases from other jurisdictions, and one from Minnesota, to support her position. *See Glarner v. Time Ins. Co.,* 465 N.W.2d 591 (Minn.App.1991),

*review denied* (Minn. Apr. 18, 1991), (interpreting affect of conditional receipt); *Smith v. North Am. Co. for Life & Health Ins.*, 775 F.2d 777 (7th Cir.1985) (holding conditions precedent within conditional receipt unsatisfied); *Rivota v. Fidelity & Guar. Life Ins. Co.*, 497 F.2d 1225 (7th Cir.1974) (interpreting effect of conditional receipt); *Cliborn v. Lincoln Nat'l Life Ins. Co.*, 332 F.2d 645 (10th Cir.1964) (conditions of conditional receipt unsatisfied); *Metropolitan Life Ins. Co. v. Wood*, 302 F.2d 802 (9th Cir.1962) (reciting California law of premium receipts); *Gaunt v. John Hancock Mut. Life Ins. Co.*, 160 F.2d 599 (2d Cir.1947), *cert. denied*, 331 U.S. 849, 67 S.Ct. 1736, 91 L.Ed. 1858 (1947) (interpreting language of receipt given in exchange for premium payment); *Hemenway v. MFA Life Ins. Co.*, 211 Neb. 193, 318 N.W.2d 70 (1982) (determining extent of coverage provided by conditional receipt); *Grandpre*, 261 N.W.2d at 806 (interpreting effect of conditional receipt); *Palmer v. Mutual Life Ins. Co.*, 324 F.Supp. 254 (D.Me.1971) (analyzing provisions of conditional receipt); *Simpson v. Prudential Ins. Co. of Am.*, 227 Md. 393, 177 A.2d 417 (1962); *Adolf v. Union Nat'l Life Ins. Co.*, 170 Neb. 38, 101 N.W.2d 504 (1960) (analyzing effect of conditional receipt); *Reynolds v. Northwestern Mut. Life Ins. Co.*, 189 Iowa 76, 176 N.W. 207 (1920) (interpreting language of premium receipt). All these cases are distinguishable on their facts. In each instance cited by appellant, either a conditional or premium receipt was issued to the applicant. It is undisputed that Dr. Heideman was issued neither a conditional receipt nor "premium receipt" when he completed and mailed his application.

Neither the insurance application nor the accompanying promotional literature made the flat representation that an interim benefit or coverage would be provided to applicants prior to NWNL's formal assent to the application.

Appellant argues that the mere fact that Dr. Heideman sent a premium payment check to respondent before his application was accepted or his policy issued, resulted in interim insurance coverage on his date of death. We disagree. This interpretation of this policy would result in this insurance company being exposed to liability for a risk it did not agree to assume. *See e.g., Braman*, 73 F.2d at 395–397 (by issuing binding receipt, and the conditions for such a receipt are properly satisfied, an insurance company agrees to assume risk as of the date of the receipt even though the execution of the policy may be delayed for considerable time). This policy did not allow (as perhaps others might) for immediate coverage, whether interim or permanent, upon simply filling in the application and depositing it in the mail along with a premium check.

Unless an insurer expressly provides, no conditional receipt or coverage can be assumed before the actual insurance contract comes into existence. *See Sawyer*, 166 Minn. at 208–9, 207 N.W. at 308 (no contract for insurance existed where no conditional receipt was issued and insurer did not consent to the policy going into effect). The power of agents to make oral or written binders on behalf of an insurance company, even before the insurance company receives a formal application, is another rule and not at issue here. Dr. Heideman did not go through an agent and simply completed a group mailing form by himself.

The district court properly found that Dr. Heideman's filling out the application and mailing in the first premium did not give rise to interim life insurance coverage.

### III.

We conclude that no contract for life insurance ever came into being between Dr. Heideman and NWNL. Thus, we find it unnecessary to address appellant's other arguments.

### DECISION

The district court did not err in granting summary judgment for respondent.

**Affirmed.**