# HERBERT MARKMANN v. H. A. BRUNTJEN COMPANY.

81 N. W. (2d) 858.

March 22, 1957—No. 37,029.

*Brill & Brill,* for appellant.
*Callahan & Callahan,* for respondent.

NELSON, JUSTICE.

Plaintiff operating as a dealer in Newton, Jasper County, Iowa, made an offer on October 17, 1954, to the defendant, H. A. Bruntjen Company, Minneapolis, Minnesota, as distributor, accompanied by the delivery of his check for $1,000 as a downpayment. At the time Herbert Markmann, plaintiff herein, was present in person at the office of defendant at 1645 Hennepin Avenue in Minneapolis. The negotiations were carried on and completed between the plaintiff and Walter I. Merila, sales director for defendant.

The offer was reduced to writing in the form of a Sales-Service Order which plaintiff signed. It appears to have been dated October 16, 1954, Walter I. Merila witnessing plaintiff's signature. A Distribution-Dealer Agreement was likewise prepared and signed by

plaintiff and by the sales director on behalf of the defendant company. Both documents were left with the sales director subject to approval and acceptance at the home office of the H. A. Bruntjen Company.

The defendant was engaged in distributing fruit products known as H. A. Bruntjen Company Concentrates. It also manufactured a machine known as a Mist-Master, designed exclusively to be used by dealers in the sale of its concentrates.

Plaintiff offered to purchase from defendant the exclusive rights for sale and distribution of its concentrates in the counties of Jasper, Marion, Mahaska, Poweshiek, Iowa, and Johnson in the State of Iowa. This included the exclusive right for the use and ownership of five Mist-Master machines in the territory consisting of the aforesaid counties. For this agreement plaintiff offered to pay $2,000 and in return it was provided that he should have the option of purchasing additional machines for his exclusive use and the exclusive right to purchase as needed defendant's true-fruit concentrates. Defendant was not to sell any of its machines or concentrates in the aforesaid territory except to plaintiff as dealer as long as plaintiff would abide by the terms of the agreement. It is provided in the Distribution-Dealer Agreement that the written documents embodying plaintiff's offer represents a final and complete agreement between the parties and that no other agreement, expressed or implied, shall apply.

The price for machines and franchises totaled $3,925. The downpayment represented by plaintiff's check for $1,000 was allocated $650 to payment of machines and $350 on the franchise for the purpose of specifying the method of paying the balance of the consideration.

Plaintiff left Minneapolis for Newton, Iowa, and the Sales-Service Order and Distribution-Dealer Agreement and downpayment remained in the hands of the defendant's sales director for approval and acceptance at the home office. On October 21, 1954, two letters were written on defendant's behalf and mailed to plaintiff's home address at Newton, Iowa. These letters appear as Exhibits E and F in the record. Exhibit E is in the following form:

"H. A. Bruntjen Company
(Letterhead)

"October 21, 1954

"Mr. Herbert Markmann
1514 W. 2nd Street No.
Newton, Iowa.
"Dear Mr. Markmann:

"Per our conversation while you were in our office October 17th, this is to act as a rider to your agreement and state that your territory agreement excludes the placement of the Mist-Master machine in theaters in Iowa.

"Thank you.

"Yours very truly,
"H. A. Bruntjen Company
Walter I. Merila
Sales Director

"WIM/ps
cc"

It is clear that this letter was designed to act as a rider to the Distribution-Dealer Agreement and to exclude the placement of the Mist-Master machine in all theaters in the Iowa territory designated in the agreement, which it was originally agreed, in consideration of plaintiff's offer, should be exclusive without exception. This letter, which was to act as a rider, was signed by Mr. Merila, and referred to a conversation which was purported to have taken place on October 17, 1954, the date of the original offer. Plaintiff testified that no such conversation took place, and Mr. Merila recalled none, nor did a letter of October 18, 1954, identified as plaintiff's Exhibit D in the record, which was apparently written to clarify the offer and on the day following the supposed conversation, contain any reference thereto. Defendant, however, clearly intended that the theaters should be excluded, as they were excluding them for everybody at that time, and Mr. Merila testified that the company must have made a mistake in preparing the documents, including plaintiff's offer.

Plaintiff's Exhibit F, also dated October 21, is a letter welcoming plaintiff to the business and acknowledging the offer contained in the Sales-Service Order and the Distribution-Dealer Agreement with a summary of how much money plaintiff owed defendant and upon what terms. No mention was made therein relative to excluding theaters in the Iowa territory allocated to plaintiff nor was any mention made of the letter of the same date sent to act as a rider to the agreement and excluding all theaters in the territory. It appears that plaintiff received the letter which was to act as a rider on Saturday, October 23, 1954, and it also appears that on Monday, October 25, following a phone conversation with Mr. Merila, plaintiff, through his attorneys, notified the defendant company in writing that he was withdrawing his offer because his offer and the agreement subject to acceptance, among other things contained an exclusive right to the territory therein described, but that by the letter of October 21, 1954, all theaters were being excluded. The defendant replied four days later, making no claim that plaintiff's understanding of defendant's position was erroneous but simply stating in the main that they were retaining the $1,000 and did not intend to seek any further payments for the machines.

We are unable to discern from the record that any other action was taken on the part of the defendant in connection with this contract, except, that of obtaining the certification of plaintiff's check for $1,000 and writing the letters which appear as exhibits in the record.

As to the two letters, Exhibits E and F dated October 21, 1954, it does not appear in the evidence by any direct proof that they were both deposited in the mail on that date, but it does appear that the sales director, Mr. Merila, signed the letters and placed them both in the hands of the employee in the defendant's office who takes care of the mailing. The defendant admits that neither of these letters was mailed before October 21, 1954, although Mr. Merila, when testifying, personally did not know which letter was mailed first. A divergence in the testimony does appear as to when the plaintiff received the two letters of October 21, but testimony taken when the

matter was freshest in his memory, by deposition December 21, 1954, was to the effect that the letter designed to act as a rider to the agreement was received October 23, 1954, and the welcoming letter as the letter of acceptance bearing the same date was received October 23 or 24, 1954. So far as the record discloses, the letter which was to act as a rider to the agreement was not received later than the purported letter of acceptance.

Subsequently this action was commenced by plaintiff for the recovery of the downpayment of $1,000 plus interest. The court below at the close of the testimony directed a verdict in plaintiff's favor for $1,084. Defendant thereafter moved on the minutes for judgment notwithstanding the verdict or for a new trial on the ground that the trial court erred in directing a verdict for plaintiff. The motion was denied and defendant appeals from the judgment entered pursuant to the verdict, and lists the following assignments of error:

(1) The trial court erred in directing a verdict for plaintiff.

(2) The trial court erred in failing to direct a verdict for defendant.

(3) If the trial court did not err in failing to direct a verdict for defendant then the trial court erred in not allowing the case to go to the jury upon instructions from the court.

■ The rule appears to be well settled in this state that an acceptance which differs substantially and materially from the terms of the original offer does not give rise to a completed contract. This court held in the recent case of Minar v. Skoog, 235 Minn. 262, 265, 50 N. W. (2d) 300, 302, that:

"An acceptance, to be valid and to give rise to a binding contract, must be made in unequivocal and positive terms which comply *exactly* with the requirements of the offer. If the acceptance seeks to vary, add to, or qualify the terms of the offer, it is not positive and unequivocal, and constitutes a rejection of the offer and a counteroffer. A valid acceptance must not only embrace the terms of the offer with exactitude, but it must be unequivocally expressive of an intent to create thereby, *without more,* a contract."

■ In Henry Simons Lbr. Co. v. Simons, 232 Minn. 187, 193, 44 N. W. (2d) 726, 730, we said:

"* * * Because of strict rules governing offer and acceptance, which require that an acceptance be in terms of the offer, we are reluctant to follow by analogy rules laid down with respect to contracts already formed. In passing upon questions of offer and acceptance, courts may wisely require greater exactitude than when they are trying to salvage an existing contract. Where no contract has been completed and neither party has acted to his detriment, there is no compulsion on a court to guess at what the parties intended."

■ We think it reasonable to say that the law imputes to a person, who has as a party to a contract embodied therein all its terms and conditions whether as offeror or offeree, an intention corresponding to the reasonable meaning of his words and actions. See, Dybvig v. Minneapolis Sanatorium, 128 Minn. 292, 150 N. W. 905. In Benedict v. Pfunder, 183 Minn. 396, 237 N. W. 2, we held that it is not the subjective thing known as the meeting of the minds, but the objective thing, manifestation of mutual assent, which is essential to the making of a contract.

■ The plaintiff argues that in the present case the objective manifestation of defendant's assent or lack of it are contained in the two letters dated October 21, 1954, together with whatever inferences may be drawn from defendant's only letter dated October 29, 1954, following plaintiff's withdrawal based upon the modification contained in defendant's requested rider. In contract law the term "rider" is applied to an additional paper attached to and forming a part of a contract.[1]

The letter of October 21 requesting the rider to the agreement is a statement of what the contract will be as accepted; in effect it is a statement of what the contract is, and will be, after October 21, 1954. The two letters bearing the same date of October 21, 1954, in

[1]The term "rider" is applied to an additional paper attached to, and forming part of, an insurance policy. Hukle v. Great American Ins. Co. 230 App. Div. 477, 479, 245 N. Y. S. 240, 242; Knowlton v. Patrons Androscoggin Fire Ins. Co. 100 Me. 481, 484, 62 A. 289, 290, 2 L.R.A. (N.S.) 517, 518.

effect constitute a single communication stating that the defendant was accepting plaintiff's offer with a modification as to territory according to the rider provisions made a part of the contract, and no matter in what order they were received the situation does not permit any other true interpretation. This interpretation is confirmed by defendant's later letter in response to plaintiff's withdrawal.

■ In 1 Corbin, Contracts, § 61, p. 188, the author states that:

"* * * if an offeror or one who solicits offers expressly provides that he will not be bound by a contract until 'approval at the home office' * * * there will be no contract until that approval takes place, unless there are subsequent expressions of agreement to be bound without it. An acceptance that ignores such a requirement by the offeror can be no more than a counteroffer. One who has made such a requirement should not be permitted to trick the other party into a contract by 'waiving' it, as long as the other party reasonably believes that his own expression of assent is revocable until it occurs."

In 1 Corbin, Contracts, § 82, p. 262, the author makes the following comment:

"When a travelling salesman or soliciting agent submits an order form and induces his customer to sign the order or to mark it 'accepted,' the order expressly providing that it is 'subject to approval of the home office,' the customer is making an offer, not accepting one. His order is not a conditional acceptance or counter offer; it is the only offer that is made, being revocable until acceptance at the home office."

■ In Id. § 83, the author makes certain observations, as follows, which we think definitely apply to the situation before us in the case at bar:

"It should be noted that a proposal fails to be an operative offer unless it specifies, directly or by reference, all the terms of the contract to be made. If the contemplated agreement is to be bilateral, the proposal must state the terms of each promise in full. The offeror must not only state the terms of the promise that he is himself willing to make; he must also state the consideration for which he is

willing to exchange it. If the offeree changes any term of either promise or changes the consideration that the offer proposes for any promise, he is not accepting the offer. The offeror and offeree, alike, must express agreement as to every term of the contract. The offeror does this in the offer; the offeree must do it in his acceptance."

■ We have no difficulty in reaching the conclusion in the instant case that the contract agreement contemplated between the parties was by its terms a bilateral one. The original Distribution-Dealer Agreement specified, directly or by reference to the Sales-Service Order, all the terms of the contract to be then made between the parties. This original agreement, which together with the Sales-Service Order was to be submitted to the home office for approval, is concluded by the statements that it represents a final and complete agreement between the parties; that no other agreements, express or implied, apply; and that it is not subject to dealer's cancellation and is subject to approval by H. A. Bruntjen Company.

We think it clear that by the terms of the requested rider defendant, the offeree, in legal effect changed the terms of the contract and did not accept plaintiff's offer. Its acceptance amounted to nothing more than a counteroffer, and as a result there was no manifestation of mutual assent which is essential to the making of a contract. In other words, where, as here, an offer to enter into a contract has been made by the plaintiff and the contract has been held by the one to whom the offer was made for acceptance or rejection at the home office and later the offeree in a purported acceptance includes a new condition or an additional requirement not a part of the offer, or the original agreement, no contract results unless or until the plaintiff, who made the offer, consents to or acquiesces in the additional condition or requirement. Plaintiff declined to acquiesce therein. Since the acceptance was conditional and amounted to a counterproposal, all negotiations were terminated upon plaintiff's withdrawal. See, 4 Dunnell, Dig. (3 ed.) § 1740. No lawful right remained thereafter whereby the offeree could either claim or retain the downpayment.

■ We conclude that the trial court was justified in its direction of the verdict in plaintiff's favor. Upon the state of the record, a contrary verdict would be in contravention of the law applicable to the case.[2]

Affirmed.

---

[2]Hanson v. Homeland Ins. Co. 232 Minn. 403, 45 N. W. (2d) 637; Lee v. Lee, 248 Minn. 496, 80 N. W. (2d) 529.