**ALPHA VENTURE/VANTAGE PROPERTIES, Appellant,**

v.

**CREATIVE CARTON CORPORATION, et al., Respondents.**

**No. C8–84–2118.**

Court of Appeals of Minnesota.

July 2, 1985.

Review Denied Sept. 19, 1985.

John J. Waters, Matthew L. Fling, Bloomington, for appellant.

Gerald T. Carroll, Jr., Jeffrey P. Carroll, Minneapolis, for respondents.

Heard, considered and decided by WOZNIAK, P.J., and NIERENGARTEN and CRIPPEN, JJ.

## OPINION

WOZNIAK, Judge.

Alpha Venture/Vantage Properties, Inc., lessor, commenced this action against Creative Carton Corporation, lessee, to recover rent, operating expenses, a percentage of a broker's commission and attorney's fees. Creative counterclaimed, seeking the return of its rental security deposit and prepaid rent for the period of August 29–31.

After trial to the court, judgment in favor of Creative in the amount of $4,054.77 was ordered—the security deposit coupled with three days' prepaid rent. Vantage moved for a new trial.

Upon stipulation of the parties, the court amended the order, awarding Vantage $752.41 for operation expenses, reducing the judgment to $3,302.36.

On appeal, Vantage seeks $8,146.41. The sum represents three months' rent plus the stipulated operating expenses of $752.41, less the security deposit of one month's rent. We reverse.

## FACTS

Creative leased 13,500 square feet of warehouse and office space at 1770 Annap-

olis Lane, Plymouth, Minnesota, from Vantage. The written agreement, for a term of five years, commenced June 1, 1979.

Creative moved out of the leased premises and into a newly purchased building in February 1983. Creative then sought a substitute tenant for the Annapolis Lane property.

PSM, Incorporated agreed to take over the lease. PSM was leasing another space from Vantage at 2031 Annapolis Lane, in the Westpoint business district, and had been leasing a portion of Creative's space on a month-to-month basis.

The three parties negotiated an agreement, dated June 1, 1983, whereby: a) the remaining year of Creative's lease was terminated and the space re-leased to PSM for three years; b) Vantage returned Creative's security deposit; c) Creative leased the smaller, Westpoint property for one year at $3,697 per month and paid a security deposit of one month's rent. The Westpoint property is the subject matter of this litigation.

Vantage knew Creative never intended to occupy the Westpoint property. In fact, Creative requested Vantage's help in securing a lessee. Creative, however, did not relinquish control of the building, including the right to lease the premises. Creative paid June, July, and August's rent in a timely manner.

Vantage found another tenant, Waymouth Forms, Inc., in early August. Waymouth offered to lease the Westpoint property for 39 months at $3,980 per month, provided the first three months' rent were free and certain improvements were made.

On August 11, 1983, Vantage and Creative met to discuss the terms upon which to dissolve the Westpoint lease. Vantage suggested that, in order to buy out the remaining 9½ months of the lease agreement, Creative pay three months' rent in advance, and pay $3,500 in leasehold improvement costs for the prospective tenant. The buy-out plan would cost $15,000. Creative rejected the proposal.

Vantage's representative then called Creative's representative and suggested that Creative pay three months' rent at $3,697 per month as a condition to the buy-out.

Creative, in a letter dated August 12, offered to pay three months' rent, but stated that the company would not pay for any building improvements. Creative also offered to forego a $242 monthly commission.

Vantage then entered into a lease with Waymouth, paying a $5,731.20 commission to Perlich Realty, Inc., and spent $752.41 on improvements. The lease was dated August 15, 1983. Waymouth signed it on August 17, then sent it to Vantage's main office in Texas where it was signed August 23, 1983. The lease, for a term of 39 months, was to commence September 1, 1983. The rent was raised to $3,984 per month. Waymouth took possession on August 29, 1983.

Upon receipt of Creative's letter, Vantage sent a reply letter of acceptance. In the letter, Vantage agreed to Creative's terms, but introduced a new subject matter. The August 18, 1983 letter introduced the following request for sharing of the real estate commission:

> At the time I talked with Dale Lund [Creative's agent], I was not aware that an outside broker was involved in procuring the tenant who is to take the space. The broker fee should be shared with Creative Carton paying for the period from Sept. 1, 1983, through May 31, 1984, and Vantage picking up the balance. Your share of this cost is $1,432.80.

Attached to the letter was Vantage's form termination of lease agreement which Vantage directed Creative to sign and return. Vantage contends this letter was an acceptance of Creative's offer to terminate. Creative argues the letter was a counteroffer. The trial court found the letter to be a counteroffer.

Creative's agent was on vacation when the August 18 letter arrived. The letter did not call for an immediate response. On August 29, 1983, the agent observed the

premises occupied by the new tenant. Shortly thereafter, Creative, through its attorney, sent a letter to Vantage rejecting the terms of the August 18, 1983 letter. The letter, dated September 7, 1983, also stated that Creative considered the lease terminated by virtue of Vantage's unilateral action in placing Waymouth in the premises.

Vantage then commenced this action, claiming three months' rent, operating expenses and the real estate commission demanded in the August 18, 1983 letter. At the time of trial, Vantage abandoned its claim for the broker's commission, and the parties stipulated to the operating expenses through August 31, 1983.

The trial court ruled in favor of Creative. The court ruled that the parties never agreed on conditions for the termination of the Westpoint lease. The court also ruled that Creative was released of all obligations on its lease because Vantage had rented the premises to another.

### ISSUES

1. Did the trial court err in determining that the parties never agreed on conditions for terminating the Westpoint lease?

2. Is Vantage entitled to attorney's fees pursuant to the lease?

### ANALYSIS

### I.

It is well settled that, in order to form a contract, an acceptance must be coextensive with the offer and may not introduce additional terms or conditions. An acceptance which qualifies the terms of the offer is, in essence, a rejection of the offer and is treated as a counteroffer. However, it is equally well settled that requested modifications of the offer will not preclude the formation of a contract where it clearly appears that the offer is positively accepted, regardless of whether the requests are granted. *Podany v. Erickson*, 235 Minn. 36, 38, 49 N.W.2d 193, 194 (1951).

Creative's August 12, 1983 letter constituted an offer to terminate the lease. The terms of the offer were: (1) Creative would pay three months' rent for September, October, and November; (2) Creative would not pay any building improvement costs; (3) Vantage would not have to pay Creative the $242 per month commission due from September 1983 on.

Vantage's agent responded by letter dated August 18, 1983. He accepted the terms of Creative's offer, yet introduced a new subject matter—a request that Creative pay a share of the broker's commission in the sum of $1,432.80.

The question is whether Vantage's letter of intention to terminate the lease constituted an acceptance of the offer or a counteroffer. The trial court found this acceptance to be conditional and therefore a counteroffer, apparently because, although no such provision appeared in the offer, the letter of acceptance contained a request for a broker's fee.

The controversial language of the letter constitutes a request rather than a command. The letter does not make the request an express condition, nor do we find any inference of a condition. Instead, it appears clear to us that asking for a broker's fee was merely a request or suggestion, and not a qualification of the acceptance of the offer. In addition, it is reasonable to suggest that the termination of lease form would not have been sent to Creative for execution if termination was intended to be expressly conditioned on agreement to the requested modification.

As Vantage's letter of August 18, 1983 merely requested a modification and did not make acceptance conditional upon acquiescence in the request, the letter operated as a valid acceptance of Creative's offer to pay rent for the months of September, October, and November of 1983. Creative's subsequent failure to make such payment constitutes a breach of that agreement, rendering Creative liable to Vantage in the amount of $8,146.41 (three months' rent plus the stipulated operating expenses

of $752.41, less the security deposit of one month's rent).

Had we agreed with the trial court, however, and held that no contract was formed, the judgment would have been reversed on the basis of the doctrine of promissory estoppel.

 Under the theory of promissory estoppel, a promise which the promisor should reasonably expect to induce action on the part of the promisee, and does induce such action, is binding if injustice can be avoided only by enforcement of the promise. *United Electric Corporation v. All Service Electric, Inc.*, 256 N.W.2d 92, 95 (Minn.1977).

Creative promised to pay three months' rent in exchange for termination of the lease. Creative should have anticipated Vantage substituting Waymouth as a tenant in reliance on Creative's promise to pay the three months' rent. Therefore, this promise is binding, and Creative is estopped from relying upon the purported broker's fee condition to avoid payment.

## II.

Vantage claims that it is entitled to attorney's fees pursuant to the rental agreement. The relevant provisions provide:

Clause 27: In the event the lessee defaults in the performance of any of the terms, covenants, agreements or conditions contained in this lease and lessor places in the hands of an attorney the enforcement of all or any part of this lease, the collection of any rent due or to become due or recovery of possession of the leased premises, lessee agrees to pay lessor reasonable attorney's fees for the services of the attorney, whether suit is actually filed or not. In no event shall the attorney's fees be less than 15% of the outstanding balance owed by lessee to lessor.

Clause 23. (a): The following shall be deemed to be events of default by lessee under this lease:

(a) lessee shall fail to pay when due any installment of rent or any other payment required pursuant to this lease.

In order for Vantage to collect under these provisions, Creative must be in violation of the terms of the lease. The legal action we have here is not what was envisioned by these provisions of the lease. Therefore, Vantage is not entitled to attorney's fees.

## DECISION

The trial court erred in determining that the parties never agreed on conditions to terminate the lease.

Vantage's August 18 letter merely requested a sharing of the broker's fee and did not make acceptance conditional upon acquiescence in the request. Therefore, the letter operated as a valid acceptance of Creative's offer to pay rent for the months of September, October, and November of 1983 in exchange for Vantage terminating the lease.

The trial court did not err in determining that Vantage is not entitled to attorney's fees.

Reversed.