The **TRAVELERS INSURANCE COMPANY, a Connecticut corporation, Plaintiff,**

v.

**WESTRIDGE MALL COMPANY, a Minnesota limited partnership, and Unger Properties, a Minnesota limited partnership, Defendants.**

Civ. No. 3–90–0684.

United States District Court,
D. Minnesota,
Third Division.

June 3, 1992.

Patrick J. McLaughlin, Paula D. Osborn, and Tracey R. Lindberg, Oppenheimer, Wolff & Donnelly, Minneapolis, MN for plaintiff.

J.H. Strothman, Jonathan M. Bye, Ansis V. Viksnins, Lindquist & Vennum, Minneapolis, and Robert J. Sefkow, Kershner Law Office, Fergus Falls, MN, for defendants.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

### INTRODUCTION

This matter is before the court on plaintiff's motion for summary judgment and defendant Westridge's cross motion for partial summary judgment. For the following reasons, plaintiff's motion is granted and defendants' motion for partial summary judgment is denied.

### BACKGROUND

The pertinent facts as they relate to this motion are as follows. Plaintiff Travelers Insurance holds a mortgage on the property at issue, a shopping center in Fergus Falls, Minnesota. Defendant Westridge Mall Company is a limited partnership which owns the fee interest in the property on which the Mall is located. Defendant Unger Properties is the successor in interest to Eleanor Unger, the original Ground Lessor on the Ground Lease under which Westridge has an interest in the property.

Beginning in May 1990 the Mall did not have sufficient cash to both pay the property taxes due in that month and to make its Mortgage payment and wrote to Travelers asking for a "moratorium on the May payment." The Mall made the June, July and August payments. By letter dated July 25, 1990, Travelers notified Westridge that it considered the loan delinquent. Several items of correspondence passed between the parties and meetings were held with defendants essentially seeking a loan restructuring to enable it to make its loan payments. There is evidence that initially Travelers was amicable to such a restructuring; however, at some later date Travelers decided instead to seek foreclosure. Defendants allege that Travelers entered into a binding loan modification as a result of the loan restructuring discussions. Defendant Unger contends that Travelers is not entitled to foreclose on Unger's fee interest in the Mall property because the 1977 Security Pacific Mortgage was not supported by any consideration given to Eleanor Unger. Travelers counters to defendant's claims that it only discussed restructuring and never committed to any loan modification. Travelers further asserts that adequate consideration existed to support the Mortgage.

Based on the court's rulings at the hearing on Friday, May 15, 1992, dismissing defendants' counterclaims, the primary issue that remains to be decided is whether the parties entered into a legally binding loan modification agreement in the Fall of 1990. The court will also address defendants' partial motion for summary judgment with respect to the "assignment of rents."

### DISCUSSION

I. Traveler's Motion for Summary Judgment

A party is entitled to summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, demonstrate that there is no genuine issue as to any material facts, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

It is undisputed that Westridge is in default under the terms of the Note and Mortgage. It is further undisputed that the Mortgage gives Travelers a security interest in the property and further provides that if default occurs in the payment of any installments of principal or interest, all of the indebtedness secured by the Mortgage shall become due and payable and that Travelers shall have the power to foreclose on the property. Westridge nonetheless argues that the parties have entered into a legally binding loan modification agreement.

No material issues of fact remain and therefore disposition by summary judgment is appropriate. By Westridge's admissions, nothing as of October 26, 1990 constituted an agreement to restructure the loan. Indeed, in its reply brief Westridge titles the October

26 meeting as "Travelers' Offer." Thus, the analysis of whether there was an agreement to restructure the loan begins at this date. Westridge has only shown that for a period of time Travelers was willing to negotiate about a loan restructuring. Mere negotiation does not constitute a binding agreement. This court will not impede Travelers' right of foreclosure simply because it was willing to discuss alternatives to foreclosure.

■ Viewing the facts in Westridge's favor, Westridge's claim of loan modification fails as a matter of law. An offer is a manifestation of willingness to enter into a bargain which justifies the other party in understanding that assent will conclude a deal. *Day v. Amax, Inc.*, 701 F.2d 1258, 1263 (8th Cir.1983), *citing* Restatement (Second) of Contracts § 24 (1981), and an acceptance is a manifestation of the assent to the offer, as evaluated under an objective standard. *Holman Erection v. Orville E. Madsen & Sons, Inc.*, 330 N.W.2d 693, 695 (Minn. 1983), *citing* Restatement (Second) of Contracts § 19 (1979). Westridge deems the October 26 meeting between the parties as Travelers' offer for loan modification and its own November 14, 1990 letter as the acceptance. However, Westridge ignores Travelers' November 1, 1990 letter. Even assuming the proposals made by Travelers at the October 26 meeting constituted an offer, Westridge's November 1, 1990 letter, a counteroffer, terminates the October 26 offer. For an enforceable agreement to exist, the offeror and offeree both must express agreement on every material term of the contract. *Markmann v. H.A. Bruntjen Co.*, 249 Minn. 281, 289, 81 N.W.2d 858, 863 (1957). If an acceptance seeks to vary, add to, or qualify the terms of the offer, it is not positive and unequivocal and constitutes a counteroffer and a rejection of the original offer. *Hough v. Harvey*, 410 N.W.2d 53, 55 (Minn.Ct.App. 1987). The terms of the November 1 letter differed materially and substantially from the terms described at the October 26 meeting. Most notably, the interest rate in the "restructured loan" was lowered and it provided retroactivity in the lower interest rate. A party's rejection of an offer terminates its power of acceptance and the offer cannot be revived by a new tender of acceptance. *Da-*

*taserv Equip. Inc. v. Technology Fin. Leasing Corp.*, 364 N.W.2d 838, 841 (Minn.Ct. App.1985). Thus, Westridge's November 14, 1990 correspondence could no longer serve as an acceptance. Westridge admits that its November 1, 1990 proposal was rejected by Travelers. The result is no binding agreement.

■ Westridge argues in the alternative that Travelers' November 21, 1990 letter confirmed or renewed a previous "offer." This alternative argument fails. The language of that letter clearly states that "Travelers is willing to discuss a workout proposal consistent with the general outline discussed by Rich Trembath in our last meeting." In this letter, Travelers' position is clear. "Willing to discuss" meant only that Travelers would discuss the matter, not that an offer was on the table. The letter is only an invitation to continued negotiations.

Even if the correspondence between the parties somehow constituted a loan modification "agreement", the agreement fails to satisfy the statute of frauds. Minnesota Statute § 513.33 subd. 2 provides that:

A debtor may not maintain an action on a credit agreement unless the agreement is in writing . . . and is signed by the creditor and debtor.

A "credit agreement" includes "an agreement to lend or forbear repayment of money." Minn.Stat. § 513.33 subd. 1(1). *See Carlson v. Estes*, 458 N.W.2d 123 (Minn.Ct.App.1990) where an oral agreement to lower the interest rate on loan balance was a "credit agreement." The negotiations and letters passed between the parties do not amount to a written credit agreement and therefore Westridge's claim fails as a matter of law.

Westridge admits it has failed to make its loan payments. In fact, even under the terms of its alleged modified loan agreement, Westridge remains in default. Thus, Travelers should be allowed to pursue its remedy of foreclosure.

■ Defendant Unger claims that the Mortgage is unenforceable as to its fee interest on the basis that it fails for lack of consideration given to Eleanor Unger in Au-

gust of 1977, when the Security Pacific financing was arranged and she signed the Mortgage. This claim is without merit. Unger had agreed on November 3, 1975, the day she signed the Ground Lease with Orrin Ericton, to subject her fee interest to a mortgage in order to secure financing to develop a shopping mall on the premises. Further, Mrs. Unger and later Unger Properties, received substantial financial benefit from the Ground Lease. Mrs. Unger's subordination made possible the construction of the Mall on her property. She and her successors have received over $500,000 in rent on that property. Moreover, the developer's receipt of $7,000,000 financing for mall construction in exchange for the Mortgage is sufficient consideration. Consideration need not pass from the promisee to the promisor to be valid; it may move to a third party. *C & D Inv. v. Beaudoin,* 364 N.W.2d 850, 853 (Minn. Ct.App.1985). Therefore, based on the foregoing, plaintiff's motion for summary judgment is granted.

II. Defendant Westridge's Motion For Partial Summary Judgment

■ By separate motion, defendant Westridge seeks various relief with respect to the "assignment of rents". First, Westridge seeks a declaration that the "assignment of rents" is invalid and therefore Travelers can no longer be allowed to obtain rents from the property until after any foreclosure and the expiration of the redemption period. Second, Westridge contends even if the assignment of rents is valid that Travelers failed to serve notice pursuant to Minn.Stat. 559.17. Third, Westridge asserts that it be allowed to pay for its attorneys' fees from the escrowed rents.

On February 15, 1991, this court granted Travelers' motion for preliminary injunction to enforce its Assignment of Rents and ordered that all rents received from the operation of the Mall be placed into a "lock box"

account controlled by Travelers to be released only for ordinary operating expenses of the Mall. Travelers seeks the continuation of the existing "lock box" arrangement during any period of redemption following the Mortgage foreclosure sale.

■ Defendants' arguments seeking to dissolve the preliminary injunction, for the most part, parallel those arguments made before the court at the preliminary injunction hearing.[1] Nonetheless the court will reconsider the issue.[2] Westridge relies on *Metropolitan Federal Bank of Iowa v. Brookwood Manor Limited Partnership,* 1991 WL 156622 (Minn.App. Aug. 20, 1991) for the proposition that a mortgagor retains his or her rights to rents and profits during default and after the foreclosure sale during the redemption period. However, under Minnesota Stat. § 559.17 (as amended in 1977) such assignment of rents in certain commercial circumstances are allowed. The statute in pertinent part provides:

> Subd. 2 A mortgagor may assign, as additional security for the debt secured by the rents and profits from the mortgaged real property, if the mortgage:
> (1) was executed, modified or amended subsequent to August 1, 1977;
> (2) secured an original principal amount of $500,000 or more; and
> (3) is not a lien upon property which was entirely homesteaded as agricultural property. Minn.Stat. § 559.17 (1990).

Thus, an assignment of rents provision is valid within the meaning of the statute when all three conditions are met. Westridge argues that because the property was farmed prior to and during the construction of the mall, the property was "entirely agricultural." It is clear that as of September 20, 1977, the date of the Amendment to the Mortgage, the primary use of the land was commercial.[3] There is overwhelming evidence in support that the property was not

---

1. The court notes that this action was filed in November of 1991. The court granted plaintiff's motion for preliminary injunction on February 15, 1991.

2. *See Berrigan v. Sigler,* 499 F.2d 514 (D.C.Cir. 1974). The decision of a trial or appellate court whether to grant or deny a preliminary injunction does not constitute the law of the case of further proceedings and does not limit or preclude the parties from litigating the merits.

3. The original mortgage and security agreement at issue in this case was executed in early August. Various amendments to the mortgage and note were executed on September 20, 1977.

"entirely agricultural." A ground lease had been executed for commercial development and leases with mall tenants had been executed and the property had been rezoned commercial. Defendants point to the properties tax agricultural tax classification in 1977 as evidence that its primary use was agricultural. This classification, however, is based on the properties' use as of January 2, 1977 and therefore does not reflect its use in August or September of 1977. *See,* Minn. Stat. § 273.01. The January 2, 1978 tax classification, however, was commercial. Thus, the property was not "entirely" agricultural and therefore the prohibition provided in § 559.17 does not apply.[4] With respect to Westridge's claim of inadequate notice, plaintiff has given proper notice. In a letter dated September 6, 1990, Travelers indicated the loan was in default. Further, the Mortgage specifically states at paragraph 10 that upon any default the entire balance shall become due and payable "without notice or demand which is hereby expressly waived." The Note similarly provides, at page 3, that if default occurs in performance under the terms of the Note, the entire balance shall become due and payable "without notice and without demand or presentment."

■ Westridge also seeks its litigation fees in this matter be deemed "operating expenses" and therefore be paid out of the segregated account. The court does not agree that these attorneys' fees are "reasonable and ordinary operating expenses" of the mall and therefore the court denies Westridge's request.

Accordingly, IT IS HEREBY ORDERED that:

(1) Defendant Westridge's motion for partial summary judgment (clerk docket # 38) is DENIED.

(2) Plaintiff's motion for summary judgment (clerk docket # 42) is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

4. Continuing the "lock box" assignment of rents is especially appropriate in light of the court's ruling in favor of plaintiff on its motion for summary judgment.