Michael C. GRESSER, Appellant,

v.

Calvin K. HOTZLER, et al., Respondents.

No. C0–99–1078.

Court of Appeals of Minnesota.

Jan. 4, 2000.

William R. Skolnick, Sean A. Shiff, Skolnick & Associates, P.A., Minneapolis, MN (for appellant).

James A. Wellner, London, Anderson, Antolak & Hoeft, Ltd., Minneapolis, MN (for respondents).

Richard F. Rosow, Lang, Pauly, Gregerson & Rosow, Ltd., Minneapolis, MN (for amicus curiae).

Considered and decided by LANSING, Presiding Judge, SHUMAKER, Judge, and HALBROOKS, Judge.

## OPINION

LANSING, Judge.

Michael Gresser sued Calvin and Cheryl Hotzler for specific performance of a purchase agreement for commercial real estate and, alternatively, for breach of contract. On the Hotzlers' motion for partial summary judgment on Gresser's specific-performance claim, the district court held that the purchase agreement was invalid and entered final judgment against Gresser pursuant to Minn. R. Civ. P. 54.02, dismissing both the specific-performance and breach-of-contract claims. Gresser appeals from the judgment.

## FACTS

The property in dispute includes five acres of land and a building that formerly housed the Stagecoach Theatre in Shakopee. In early 1998, Michael Gresser, a real estate investor, began negotiating with landowners Calvin and Cheryl Hotzler to purchase the property. In July, Gresser submitted to the Hotzlers an unsigned, proposed purchase agreement that, among other items, required the Hotzlers

to deliver a recertified survey on August 10, 1998, and provided for closing on September 1, 1998. The Hotzlers changed several terms, initialed the changes, signed the purchase agreement, and returned it to Gresser's attorney on August 4, 1998.

On August 10, 1998, Gresser initialed the Hotzlers' changes and signed the purchase agreement. Gresser, however, made two additional changes. He changed the survey delivery date to September 10, 1998, and the closing date to October 15, 1998. Gresser initialed both date changes. Gresser made these changes on the advice of his attorney, who had talked to the Hotzlers' realtor. The attorney and the realtor agreed that, because of the time that had elapsed, the original survey and closing dates had become impractical. The attorney knew that the realtor had not consulted the Hotzlers about the changes, and both Gresser and his attorney knew that the realtor did not have the power to bind the Hotzlers.

Gresser's attorney returned the signed purchase agreement to the realtor on August 12, 1998, along with $2,000 earnest money. Gresser and his attorney expected that the Hotzlers would initial the date changes and return the purchase agreement to them. The realtor delivered the purchase agreement to Calvin Hotzler on August 12, 1998, but testified that he did not indicate whether Gresser had signed the counteroffer. Calvin Hotzler assumed the parties had a deal, but he did not read the purchase agreement. Instead, he placed it on the kitchen counter to await the return of Cheryl Hotzler, who was out of town. Later that day, Calvin Hotzler showed Gresser the property and introduced him to tenants as the buyer.

On the afternoon of August 12, 1998, the realtor received another offer for the property, which he forwarded to the Hotzlers. Calvin Hotzler placed this document on the kitchen counter as well. On August 13, the Hotzlers reviewed both documents, decided to accept the new offer, and signed that purchase agreement.

## ISSUES

I. Given the undisputed facts in the record, did the district court err by concluding that the purchase agreement between the Hotzlers and Gresser was not legally binding?

II. Did the district court err by refusing to apply equitable estoppel?

## ANALYSIS

■ On appeal from summary judgment, the reviewing court determines whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *Wallin v. Letourneau*, 534 N.W.2d 712, 715 (Minn. 1995). Whether a contract exists is generally an issue for the factfinder. *Morrisette v. Harrison*, 486 N.W.2d 424, 427 (Minn. 1992). But when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," summary judgment is proper. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn.1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### I

■ Whether a contract is formed is judged by the objective conduct of the parties and not their subjective intent. *Cederstrand v. Lutheran Bhd.*, 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962). Minnesota has followed the "mirror image rule" in analyzing acceptance of offers. Under that rule, "an acceptance must be coextensive with the offer and may not introduce additional terms or conditions." *Podany v. Erickson*, 235 Minn. 36, 39, 49 N.W.2d 193, 194 (1951). When the offer is positively accepted, however, a requested or suggested modification does not prevent contract formation, regardless of whether the modification is accepted. *Podany*, 235 Minn. at 39, 49 N.W.2d at 194; *Alpha Venture/Vantage Properties v. Creative Carton Corp.*, 370 N.W.2d 649, 652 (Minn.

App.1985), *review denied* (Minn. Sept. 19, 1985). *See also Restatement (2d) of Contracts* § 61 (1981).

■ Gresser first argues the district court erred by making findings on disputed facts material to whether the parties formed a contract. We disagree. The district court's function on a summary judgment motion is to determine whether genuine factual issues exist. *DLH,* 566 N.W.2d at 70. In making this determination, the court may consider whether reasonable persons could draw only one inference from the evidence. *Id.* In this case, after reviewing the evidence, the district court listed the facts it found to be uncontroverted. The district court did not exceed the scope of its function on a summary judgment motion in so doing. A district court's listing of uncontroverted facts for explanatory purposes is permissible even though the findings are not accorded the deference an appellate court is required to give findings made pursuant to Minn. R. Civ. P. 52.01. *Whisler v. Findeisen,* 280 Minn. 454, 455, 160 N.W.2d 153, 154 n. 1 (1968). Even if the court engaged in unwarranted factfinding, however, its error is harmless because its legal conclusion is premised on undisputed facts.

■ Gresser primarily argues that his changes to the purchase agreement are within the modification exception to the mirror-image rule because he unconditionally accepted the Hotzlers' counteroffer and merely suggested the date changes. According to Gresser, he accepted unconditionally because he would have been willing to comply with the original dates, the realtor encouraged Gresser to make the changes, and Calvin Hotzler introduced Gresser as the owner of the property on August 12.

Viewed objectively, these facts do not demonstrate that Gresser positively accepted the purchase agreement. First, Gresser's uncommunicated subjective intent is not relevant, and, second, these facts do not suggest that the Hotzlers knew or should have known that Gresser offered the change in dates only as a suggestion. To the contrary, the undisputed facts regarding absence of any express communication, the method of initialing the changes, and the prior course of dealings between the parties indicate that the changes were part of the series of counteroffers.

Minnesota has applied the modification exception sparingly and only to those cases in which objective manifestations of acceptance existed separately from the suggestions for modifications. *See Podany,* 235 Minn. at 38, 49 N.W.2d at 195 (offeree's written acceptance clearly stated it had elected to exercise option to purchase property); *Alpha Venture,* 370 N.W.2d at 651–52 (offeree's acceptance letter attached to signed letter termination of lease agreement). Gresser proposed his changes on the face of the purchase agreement and provided no objective indication that his acceptance was not conditioned on them.

■ Gresser alternatively argues that his changes to the purchase agreement did not preclude contract formation because the changes were immaterial. The mirror-image rule historically has been strictly construed to forbid even minor variations between offer and acceptance. Many modern courts have relaxed the rule, holding that only an acceptance that differs *materially* from the terms of the original offer prevents contract formation. *See, e.g., Raydon Exploration, Inc. v. Ladd,* 902 F.2d 1496, 1500 (10th Cir.1990) (Oklahoma law); *Hoyt R. Matise Co. v. Zurn,* 754 F.2d 560, 566 (5th Cir.1985) (Texas law); *Northwest Television Club v. Gross Seattle, Inc.,* 96 Wash.2d 973, 634 P.2d 837, 840 (1981), *amended by* 96 Wash.2d 973, 640 P.2d 710 (1982).

■ The corollary to this modern rule is that an immaterial variation in the acceptance does not impede contract formation. For instance, several courts have held that, under this exception, variations im-

plied in the offer do not interfere with the completed contract. *Northwest Television Club*, 634 P.2d at 841–42; *Karas v. Brogan*, 55 Ohio St.2d 128, 130, 378 N.E.2d 470, 471 (1978); *Northwest Properties Agency, Inc. v. McGhee*, 1 Wash.App. 305, 462 P.2d 249, 253 (1969).

The Minnesota Supreme Court used the language of the immateriality exception in *Markmann v. H.A. Bruntjen Co.*, 249 Minn. 281, 286, 81 N.W.2d 858, 862 (Minn. 1957). In *Markmann*, the court held that "an acceptance which differs substantially and materially from the terms of the original offer does not give rise to a completed contract." *Id.* The *Markmann* court did not, however, find an immaterial variation or make clear that it was diverging from its former strict construction of the mirror-image rule. *Id.* (citing *Minar v. Skoog*, 235 Minn. 262, 265, 50 N.W.2d 300, 302 (1951) (holding acceptance must comply *exactly* with terms of the offer)). The Hotzlers argue that Minnesota caselaw has retained the strict mirror-image rule for real estate contracts, while tempering the rule in its application to other types of contracts. Although we note that the supreme court and this court have more often applied the strict-construction standard in cases involving real estate, caselaw provides no explicit distinction. *Compare Minar*, 235 Minn. at 265, 50 N.W.2d at 302 (applying strict-construction standard to acceptance of option to purchase real estate), *and Rose v. Guerdon Indus., Inc.*, 374 N.W.2d 282, 284 (Minn.App.1985) (applying strict construction to acceptance of offer to sell real estate), *with Markmann*, 249 Minn. at 286, 81 N.W.2d at 862 (using material-difference standard to analyze contract for sale of product distribution rights). It is, however, unnecessary to define the scope of an immateriality exception unless the changes to the purchase agreement are immaterial.

■ "Authority on what constitutes a material variation is meager." *Northwest Television Club*, 634 P.2d at 841. Black's Law Dictionary defines "material altera-

tion" as "a change in a legal instrument sufficient to alter the instrument's legal meaning or effect." *Black's Law Dictionary*, 78 (7th ed.1999). Similarly, the Florida Court of Appeals found the addition of "and/or assignees" did not constitute a material variation because it did not "change the legal effect of the contract." *Kitsos v. Stanford*, 291 So.2d 632, 634 (Fla. Dist.Ct.App.1974). We agree that the focus should be on the legal operation of the contract. Thus, only minor changes that do not substantially alter the performance obligations of the parties may be immaterial.

■ Under this principle, the date changes Gresser made are material. The changes directly affect Gresser's performance obligations under the contract, postponing his duty to perform by almost six weeks. The law of contracts is not advanced by allowing a contracting party to manipulate the finality of an obligation by rejecting an insubstantial change, but few terms are more important to sellers of real estate than the date on which they will receive the purchase money. The purchase agreement's inclusion of a time-is-of-the-essence clause further evidences the materiality of the performance date. As a matter of law, the exception to the mirror-image rule for immaterial variations does not apply to the changes Gresser made to the purchase agreement.

■ In retrospect, Gresser may have been very willing to expressly note that the changed dates were proposals rather than conditions or to retain the earlier closing date rather than risk the loss of the property. But contract formation proceeds on an objective basis and courts should not reconstruct, much less call back, the written word. The high volume of real estate transactions in Minnesota reinforces the importance of identifying and preserving a bright line in the formation of purchase agreements.

## II

The district court rejected Gresser's argument that the Hotzlers should be equitably estopped from denying the validity of the purchase agreement. We note at the outset that "it is questionable whether a contract can be created in the first instance by estoppel." *St. Paul Fire & Marine Ins. Co. v. Bierwerth*, 285 Minn. 310, 321, 175 N.W.2d 136, 142 (Minn.1969). But the equitable estoppel argument itself is flawed in its reliance on agency and ratification.

Equitable estoppel arises when "one by his acts or representations, or by his silence when he ought to speak, intentionally or through culpable negligence, induces another to believe certain facts to exist, and such other rightfully acts on the belief so induced in such a matter that if the former is permitted to deny the existence of the facts it will prejudice the latter." *Transamerica Ins. Group v. Paul*, 267 N.W.2d 180, 183 (Minn.1978). The first element necessary to establish estoppel is a misrepresentation. *Id.* Gresser does not allege the Hotzlers made misrepresentations directly, but contends that the realtor's statements that the changes would not affect the deal are attributable to the Hotzlers under agency theories.

The general rule is that real estate agents have no implied authority to contract on behalf of their principals. *La Plant v. Loveland*, 142 Minn. 89, 92, 170 N.W. 920, 921 (Minn.1919). And apparent authority must be founded on the principal's actions "since no agent by his own act can create evidence of authority." *West Concord Conservation Club, Inc. v. Chilson*, 306 N.W.2d 893, 897 (Minn.1981); *see also Hagedorn v. Aid Ass'n for Lutherans*, 297 Minn. 253, 258, 211 N.W.2d 154, 158 (1973). Gresser has not identified any conduct or statements by the Hotzlers that would support a variance from the general rule on implied authority or a finding of apparent authority.

We also reject Gresser's argument that any deficiencies in the proof of implied or apparent authority were cured by ratification when Hotzler introduced Gresser as the buyer of the property after receiving the purchase agreement with the changed dates. "Ratification occurs when one having full knowledge of all material facts confirms, approves or sanctions a previous act done on behalf of the principal without authority." *Centennial Ins. Co. v. Zylberberg*, 422 N.W.2d 18, 21 (Minn.App. 1988). Conversely, ratification cannot occur when the principal does not have full knowledge of all material facts, unless constructive knowledge is imputed by the principal's acceptance of a transaction's benefits. *Anderson v. First Nat'l Bank of Pine City*, 303 Minn. 408, 411, 228 N.W.2d 257, 259 (1975) (lack of knowledge defeats ratification claim); *Cooney v. Milwaukee Mut. Ins. Co.*, 397 N.W.2d 352, 355 (Minn. App.1986) (insurance company ratified unauthorized acts of agent by accepting premiums).

The record does not support Gresser's claim that Hotzler had actual notice of the changes to the contract when he showed Gresser the property and introduced him as the buyer. *See Jackson v. Badger*, 35 Minn. 52, 54, 26 N.W. 908, 909 (1886) (no ratification when principal continued with sale but had no knowledge that agent had made deal on different terms than he authorized). Nor does the record support Gresser's claim that Hotzler accepted the benefits of the transaction. The mere delivery of a check as earnest money is insufficient to constitute a benefit. *See Jackson*, 35 Minn. at 53, 26 N.W. at 909 (because contract was unauthorized, receipt of deposit money by agents was "not, in legal effect, a receipt by the defendant").

Finally, ratification "must be by an act of the character required for the original authority." *Judd v. Arnold*, 31 Minn. 430, 432, 18 N.W. 151, 151 (Minn. 1884). When the original authorization must be in writing, the ratification must be

in writing as well. *Id.* Because the statute of frauds requires written authorization for an agent to enter into a purchase agreement, Gresser cannot claim ratification through conduct or oral statements. *See* Minn.Stat. § 513.05 (1998).

Gresser's equitable estoppel claim also fails on the essential element of reasonable reliance. *See Transamerica,* 267 N.W.2d at 183 (listing reasonable reliance as element of equitable estoppel). Both Gresser and his attorney admit that they knew real estate agents are not authorized to contract on behalf of their principals. And Gresser's attorney also knew that the realtor had not contacted the Hotzlers before making the assurances. On these facts, any reliance on the realtor's assurances was unreasonable as a matter of law. *See West Concord Conservation Club,* 306 N.W.2d at 897 (to invoke estoppel doctrine, "truth must have been unknown" to party when he acted).

## DECISION

Because the date changes to the purchase agreement precluded contract formation as a matter of law, and because Gresser failed to assert facts sufficient to support an equitable estoppel claim, the district court properly granted summary judgment to the Hotzlers.

**Affirmed.**